NELLIE H. BARRY v. RAY SILL AND OTHERS.
ELIZABETH G. MORSE v. SAME DEFENDANTS.
UNION AUTOMOBILE INSURANCE COMPANY AND
ANOTHER, GARNISHEES.[1]

February 23, 1934.

Nos. 29,776, 29,777.

[1]Reported in 253 N. W. 14.

*Sexton, Mordaunt, Kennedy & Carroll* and *Hall & Catlin,* for appellants.

*A. R. English, C. J. Donnelly,* and *George A. Barnes,* for respondents.

*I. M. OLSEN, Justice.*

There were two suits, one by Nellie H. Barry as special administratrix of the estate of Elizabeth Barry, against Ray Sill, Jay E. Cain, and Tracy Motor Company, to recover damages for the death of Elizabeth Barry; and the other by Elizabeth G. Morse against the same defendants to recover for personal injuries to herself. Both suits arose out of one automobile accident, and recovery in each case was based on the claimed negligence of Ray Sill, the driver

of the automobile in which Elizabeth Barry and Elizabeth G. Morse were riding as guest passengers. Judgment was obtained against Ray Sill in the first suit for $7,516.05, and in the second suit for $15,050.80. The two actions were tried together. After judgment, each plaintiff garnisheed the two insurance companies, Union Automobile Insurance Company and Ohio Casualty Insurance Company, hereinafter referred to as the garnishees. They denied liability, and each plaintiff made and filed supplemental complaint against the garnishees. Answers were interposed by the garnishees, replies served, and the two garnishee suits tried together before the court. The trial court held the garnishees liable under the policy of accident insurance issued to Jay E. Cain, the owner of the automobile driven by Ray Sill. The insurance policy was issued by the Union Automobile Insurance Company. The Ohio Casualty Insurance Company had, by contract, assumed liability for losses under policies of the Union company. The court made findings of fact and order for judgment in each garnishment case. Motions for amended findings and conclusions of law or for new trials were made and denied. The garnishees appealed from the orders denying such motions. The assignments of error are that the findings of fact and conclusions of law are not justified by the evidence and are contrary to law.

■ The first point presented and argued is that defendant Sill, hereinafter referred to as defendant, the driver of the automobile in which decedent and Elizabeth G. Morse were riding, was not within the coverage of the insurance policy. That he was driving the automobile with the consent of Jay E. Cain, the named assured and owner of the automobile, is undisputed. But it is claimed that, under the limitations contained at the end of the general coverage clause, which extends coverage to anyone riding in or legally operating the automobile with the consent of the assured, the defendant was not covered. The limitations are stated as follows:

"This extended coverage, however, shall not be available to (i) any public garage, automobile repair shop, sales agency and/or service station, or the agents or employes thereof; (ii) any person, firm or corporation who is covered by any other insurance which would

cover the loss of such person, firm or corporation if this insurance had not been effected."

The specific claim is that defendant, at the time of the accident, was the agent and servant of the Tracy Motor Company, operating a public garage, repair shop, and sales agency, and that defendant was driving and operating the automobile for and in the business of said company and within the scope of his employment. The accident happened about 8:10 o'clock in the evening of March 17, 1932, on a highway out in the country.

The defendant testified, in substance, that at the time of the accident he was in the employ of the Tracy Motor Company as a bookkeeper in its garage at Tracy, Minnesota; that his hours of service were from eight a. m. to six p. m. with an hour off at noon; that he had nothing to do about ordering parts for car repairs except when ordered so to do by the manager, Mr. Anderson, or someone in authority, but that parts were sometimes procured by mechanics or salesmen from near-by towns when the manager was not at the garage. On the afternoon of the day of the accident defendant decided to go on a trip to Redwood Falls that evening on a personal mission to collect some money owing to him by a party at that place. He had previously been employed at Redwood Falls. Jay E. Cain had brought his automobile to the Tracy Motor Company's garage that day for inspection, change of oil, and greasing, and the car was in the garage. Mr. Cain came into the garage about four o'clock that afternoon. Defendant informed him that he wanted to drive to Redwood Falls, and Mr. Cain offered and consented to let defendant use his car for the trip. Just before closing time at six o'clock, a mechanic in the garage asked defendant if he would get a small repair part at Redwood Falls for a Ford truck, and defendant said he would do so if he had time after completing his personal mission. At about seven o'clock defendant took the Cain car from the garage, went to the home of decedent and Miss Morse, whom he had invited to go with him for the ride, and then started on the trip. Mr. Cain had no connection with the Tracy Motor Company.

The court found that at the time of the accident the defendant was driving the automobile on a trip then being made by him on his

own business, and that such trip was not in any sense being made for or on behalf of the Tracy Motor Company; that at the time of the accident he was not acting as an agent or employe of that company; that he was a bookkeeper in the company's garage and his hours of service and employment for the company for the day had terminated before he started on the trip. The court further found that the mechanic who requested defendant to obtain the small repairs at Redwood Falls had no authority so to request or order, and that even if defendant had complied with the request his act in so doing would have been purely incidental to his personal mission and not as an agent or employe of the motor company; that it was in no sense a "producing" cause of the trip.

The accident happened before reaching Redwood Falls, and nothing was done about procuring any repairs. The repair part wanted would cost about two dollars. · It was ordered by a man who came into the garage but did not have or leave his truck there or intend to have any repair put on the truck by the garage. As far as appears, he had not before been a customer of the garage. It seems improbable that the motor company would send a servant on a trip to Redwood Falls, 40 miles away, to obtain the sale of so small an item.

The evidence sufficiently sustains the findings of the court that this trip was a personal mission by defendant, outside of the scope and time of his employment by the Tracy Motor Company, and that, if he had looked for the repair part at Redwood Falls, it would have been a mere gratuitous service incident to the trip undertaken for his own personal business. These were questions of fact for the trial court. The line of authorities in this state on these questions is cited by counsel for plaintiffs, from which we cite the following: Kuehmichel v. Western Union Tel. Co. 125 Minn. 74, 145 N. W. 788, L. R. A. 1918D, 355; Provo v. Conrad, 130 Minn. 412, 153 N. W. 753; Robinson v. Pence Automobile Co. 140 Minn. 332, 168 N. W. 10; Moore v. P. J. Downes Co. 150 Minn. 333, 185 N. W. 395; Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W. 485; Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W.

893.    Also cited is Weiss v. Employers Liability Assur. Corp. 131 Misc. 301, 226 N. Y. S. 732.

■ There is a claim, not very seriously urged, that the words "agents or employes" of a garage, used in the limitation provision of the policy, should exclude such agents and employes during the period of employment even when the accident occurred outside of their hours of service and when they were on personal trips for their own purposes and outside of their scope of employment.    Under the well known rule as to the construction of such insurance policies with reasonable strictness against the insurer, we do not so construe the policy.    Cases already cited negative such construction.    Had the automobile been owned, or furnished to defendant, by the Tracy Motor Company, a different question would have been presented. Wendt v. Wallace, 185 Minn. 189, 240 N. W. 470, was a case where the driver of the car was a servant of the owner of the garage and engaged in his service, operating the garage at the time of the accident.

■ In the main actions it is alleged that defendant, at the time of the accident, operated the automobile as the agent and servant of Jay E. Cain and the Tracy Motor Company.    These complaints were presented to the garnishees with notice to take over the defense in the main actions.    They did defend for Mr. Cain but refused to take over the defense for defendant Sill.    They claim they were misled and that plaintiffs are now estopped by these statements in the complaints and the failure of defendant to inform the garnishees that these statements were incorrect.    But the garnishees defended for Jay E. Cain in the main actions and took an active part in the trials thereof.    Defendant Sill testified in those actions, and his testimony there, as disclosed by his cross-examination in these garnishment suits, was the same as here, that his trip to Redwood Falls was a personal mission for himself, not made during his hours of service and not as an employe of the motor company or for or on behalf of that company.    The garnishees then, if not before, were fully informed as to the facts claimed.    When later the garnishee suits were brought and tried, there was no claim that the garnishees were concluded or bound in any way by the judg-

ments in the original actions, and the garnishees presented and again had tried the question of whether defendant was in any way acting as servant or employe of the motor company at the time of the accident. We fail to see any prejudice or injury to the garnishees. Again, it must appear that the party against whom estoppel is claimed was fully informed as to his rights. It is not shown that these plaintiffs, at the time the actions were commenced, had information sufficient to determine whether defendant was acting for the motor company or for himself at the time of the accident. He was an adversary of plaintiffs in the original actions, and what, if any, information was obtained by plaintiffs from him or any other source does not appear. Estoppel does not here conclusively appear.

■ The point is raised that defendant failed to coöperate with the garnishees in defending the suits. The policy contains the usual provision requiring the insured to coöperate. The point is based on the claims that on the second day after the accident defendant gave a certain statement to a claim agent of the garnishees and therein made statements that at the time of the accident he was going to Redwood Falls to get some Ford parts for the Tracy Motor Company and that was the only reason for making the trip. It was therein also stated that defendant was the manager of the Tracy Motor Company. This statement, a lengthy typewritten document, was prepared by the garnishees' claim agent or adjuster and was taken at the Redwood Falls hospital. The initials of defendant's name appear thereon as signatures in two places. Defendant testified that he had no recollection of making, reading, or signing the statement at the time, and that he did not read it or know its contents until after the suits were brought. He did have the statement or a duplicate thereof in his possession at the hospital and thereafter took it with him to his home in Minneapolis with his other belongings, where it remained until his father sent it to him for delivery to his attorney after suits were brought. Defendant was seriously burned and injured in the accident. He was taken to the Redwood Falls hospital late in the evening of March 17, where he remained for about eight weeks. His attending physician

testified that defendant's face and head were badly lacerated and cut, one scalp wound being about seven inches long; that he had wounds over both eyes and under the chin; that he had lost much blood, and suffered from shock; that his right hand and leg and both shins were burned; that on March 19, when the statement is claimed to have been obtained, he was conscious at times and at other times "floated off" and was in a doze or unconscious; that opiates were administered before and during that day.

Defendant's father testified that on' March 19 he was in his son's room all the time the claim agent was there and heard the questions asked and the answers given by defendant; that about five minutes was the longest time that defendant was awake and recognized his father on that day; that he would answer a few words and then apparently lapse into unconsciousness; that this condition continued during the time the claim agent questioned defendant; that he was asked what his purpose was in going to Redwood Falls on the trip in question, and answered that he was going on a personal collection and, if he had time, would investigate as to what parts the Schmidt Motor Company kept; that defendant said his occupation was that of bookkeeper; that he denied that he was the manager of the Tracy Motor Company; that the agent wrote out the statement on a typewriter brought by him; that defendant was in bed, and when the statement was completed the agent and a man with him placed pillows so as partly to raise defendant up; that one of the men then helped the defendant to place his initials on the paper with the left hand, the right hand being burned, as stated.

If the court accepted the testimony so given on behalf of the plaintiffs, which it had a right to do, then the garnishees had notice and knowledge from that time of the facts as here claimed and found by the court, that in going on the trip to Redwood Falls the defendant was on a personal mission for his own purpose and was not acting for or on behalf of the motor company or within the scope of his employment.

There is the further claim that defendant at one time refused to give information to an agent of the garnishees. It is not shown what information was asked for, and the defendant denies that he refused to give information.

The court's findings that there was no concealment of facts and no failure on the part of defendant to coöperate are sufficiently sustained by the evidence.

The orders appealed from are affirmed.

