[Civ. No. 16335. First Dist., Div. Two. July 22, 1955.]

THE CANADIAN INDEMNITY COMPANY (a Corporation), Appellant, v. WESTERN NATIONAL INSURANCE COMPANY (a Corporation), Respondent.

Edward A. Friend for Appellant.

George N. Sheild for Respondent.

KAUFMAN, J.—This is an appeal from a declaratory judgment of the Superior Court of the City and County of San Francisco, decreeing that plaintiff and appellant, The Canadian Indemnity Company is obligated under the terms of its insurance policy to defend an action on behalf of its insured, Luther Burnett, and to pay any disability which may be imposed upon him therein. The judgment also declared that defendant and respondent, Western National Insurance Company has no liability under an automobile policy issued to Ivan Mercer as to plaintiff insurance company or to Luther Burnett in respect to the pending action.

On June 2, 1953, Luther Burnett owned an automobile repair shop and service station in San Pablo, California. His only employee was Ivan Mercer, a mechanic who owned a Lincoln automobile insured by respondent company. Burnett owned a truck which he used in his garage business. On some occasions he used it to pick up spare parts, and on two or three occasions prior to the accident he had used Mercer's Lincoln for this purpose. Burnett also worked as a house mover during the day, and in his garage evenings and week ends.

Burnett arrived at his garage in his truck at about 4:30 p. m. on the afternoon of June 2, 1953, and instructed Mercer to make some repairs on it. Mercer informed him that he needed certain repair parts for a customer's car which Mercer had ordered from Richmond Motors but which had not been delivered by that company's parts salesman, Jim Williams. When Burnett ordered parts, if he could not go after them, Williams would deliver them to him. Burnett was a personal as well as business friend of Williams. Mercer asked Burnett to pick up the order and Burnett borrowed Mercer's Lincoln for the purpose. In the meantime Mercer was to work on Burnett's truck.

Prior to leaving the garage, Burnett learned that Williams was ill. He was on his way to see Williams first, before going on to Richmond Motors, when the accident occurred. Both Williams' home and Richmond Motors were in the same general direction. The scene of the accident was 14 blocks from Williams' home and 10 blocks from Richmond Motors. Burnett testified that Williams had been going to bring the parts out, and when he was told that he was sick, he said, "I'll go down and see him about it." He took the parts order with him. He stated that his principal intention was to pick up the repair parts and that he would not have taken the Lincoln otherwise·

Burnett at the time of the accident had a "Comprehensive Bodily Injury and Property Damage Liability Policy" which indicated the insured's principal business as "Auto Repair Shop and Service Station." Endorsement No. 3 thereon insured Burnett for legal liability arising out of the ownership, maintenance or use of *any* automobile in connection with the operations of a repair shop and service station. The policy of respondent company covered Mercer for legal liability arising out of the ownership, maintenance or use of Mercer's personal automobile and the following coverage was excluded: "to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof."

Appellant contends that the "garage exclusion" in the policy which Mercer purchased from defendant and respondent company may not be applied in this case, and that the two policies must apply pro rata to Burnett's liability. It is conceded that Burnett was using Mercer's automobile with permission of the owner, hence the policy would cover Burnett's liability unless the exclusion is applicable to the factual situation here involved. The question presented, according to appellant is, therefore, whether the accident of June 2, 1953, arose out of the operation of the garage or service station.

Appellant maintains that the exclusion may not apply to the facts herein, inasmuch as the purpose of the exclusion is to eliminate the risks involved in the handling and operation of cars by persons working in repair shops, public garages, service stations, parking lots, and the like. Such persons have permission to drive the insured's automobile,

but he is often not acquainted with them nor does he know anything about their driving skill. It was pointed out in *Wendt* v. *Wallace,* 188 Minn. 488 [240 N.W. 470], that such an exclusion is a reasonable limitation, for the chance of accidents while the car is being driven by one of the excluded class is probably greater, and that such persons are usually covered by policies of their employees who pay premiums proportionate to the risks involved. Similar reasons were given in *Paine* v. *Finkler Motor Car Co.,* 220 Wis. 9 [264 N.W. 477, 479], for this type of exclusion.

In *Barry* v. *Sill,* 191 Minn. 71 [253 N.W. 14], it was held that where the insured gives permission to a friend to use his car for social purposes, the fact that the friend also happens to be a garageman is of no importance. There the driver of the borrowed car was a garage bookkeeper making a trip for his own pleasure after his regular working hours. He had been asked by a mechanic in the garage to pick up a spare part for a truck, and the employee said that he would do so if he had time. The court found that the trip was being made for the driver's own business, and that he was not in any sense acting as an agent or employee of the garage company. (In *Stephanelli* v. *Yuhas,* 135 Pa.Supp. 573 [7 A. 2d 124], it was held that the garage keeper's exception did not apply where the person using the car with permission picked up repair parts for his own truck. In that case it was decided that the borrower of the automobile was not acting as the agent or employee of the garage-owner, whose wife's car he had borrowed, and that the verdict was supported, for the main purpose of the driver's trip was to secure his own paycheck, and the court also noted that it could be considered part of the truck driver's duties within the scope of his employment to expedite the repairs. The court in their opinion commented that it would be possible for a driver in such a situation to be the servant of both his regular employer and of the garage owner at the same time. But since in the case then before the court the car being used was that of a third party, the garage owner's wife, and there was abundant evidence to support a finding that the driver was under the control and directions of his employer at all times and had merely assumed to act for his employer in expediting the repairs to his truck, the decision was supported.

It is further contended that the exclusion may not apply because Burnett was driving Mercer's car on a merely social call at the time of the accident. However, the evidence

clearly supports a holding that the car was being used by the garage owner for a purpose connected with the garage business. It is true that he intended to stop first at the home of Williams, the parts salesman, who was ill and could therefore not make the delivery as he usually did. Burnett took the purchase order with him from the repair shop. He testified that he would not have borrowed the car if he did not have to get the parts. He had used the car for a similar purpose on previous occasions. The evidence therefore clearly supports the findings that Burnett had not departed from nor abandoned his purpose of obtaining the repair parts by driving towards Williams' home en route, and that at the time of the accident the automobile was being used in connection with the operation of the garage and repair shop. It is noteworthy that in cases concerned with an employee, a deviation from the strict course of duty does not necessarily put the employee outside the scope of his employment if his main purpose is still to carry on the employer's business. (*Cain* v. *Marquez*, 31 Cal.App.2d 430 [88 P.2d 200] ; *Kruse* v. *White Bros.*, 81 Cal.App. 86 [253 P. 178].) Here it surely cannot be said as a matter of law that the garage owner had departed completely from his business of operating the garage when he was on his way to see a man with whom he usually transacted the phase of his business concerned with repair parts, merely because the salesman was also a personal friend and was ill that day.

It is therefore clear that Burnett was using the borrowed car at the time of the accident on a mission which arose out of the operation of a garage or repair shop. The insurance policy exclusion extends to any person operating such a shop ''with respect to any accident arising out of the operation thereof.'' The exclusion clearly applies to the situation here involved if we are to hold that the language used therein is clear and unambiguous.

■ It is true that as between the insurer and .the assured, a policy is to be construed most strictly against the insurer if the language used in the policy is ambiguous. But, as said in *Wendt* v. *Wallace, supra*, a case cited by appellant, if the language is clear, it is the duty of the court to give it effect, and this duty cannot be ignored because of the fact that an insurance company is a party to the action. This rule is enunciated in *Carabelli* v. *Mountain States Life Ins. Co.*, 8 Cal. App.2d 115, 117 [46 P.2d 1004], where it is said that where ''terms are plain and explicit, the courts cannot create a

new contract for the parties by a forced construction of such plain and explicit terms. Thus the rule of liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity.''

Appellant does not really argue that there is an ambiguity in the policy, as he could not, for the meaning of the words excluding ''any person . . . operating an automobile repair shop . . . with respect to *any* accident arising out of the operation thereof,'' are perfectly clear. (Emphasis ours.) He argues rather, that the *purpose* of the exclusion was to eliminate the class of risks involved in the driving of customers' cars by employees of public garages while those cars are being repaired, serviced or parked.

However, if the language of the exclusion clearly extends to an incident of the type involved herein, the reasons of the insurer for including the exclusion in the policy are immaterial. It was said in *Alberga* v. *Pennsylvania Indem. Corp.*, 114 Pa.Supp. 42 [173 A. 697], that ''Whatever reason may have prompted the insertion of the exceptions is of no consequence if the business is included within the exceptions. The parties had a right to write their own contract, and it is not the function of this Court to rewrite the same or to give any other construction thereto than implied from the plain language used.'' (See *Lumbermien's Mut. Cas. Co.* v. *Indemnity Ins. Co.*, 186 Va. 204 [42 S.E.2d 298].) The fact that in several cases the exclusion has been held reasonable in its application to the customer or patron relationship does not necessarily imply that the exclusion may only apply when the borrowed automobile is that of a customer of the garage operator. The exclusion does not require a customer relationship to exist in order that it apply, but only that the car be used by anyone operating an automobile repair shop and that the accident arise out of the operation of such an establishment.

The activity of securing repair parts is part of the operation of a garage business. In *Wendt* v. *Wallace, supra,* it is said that the word ''operated'' usually means the same as ''to run a business; to carry on in the business to which the word is applied; to continue in operation or activity; to carry out or through; to work; to act; to conduct a business.'' That case went on to state that '' 'the operation' of a public garage as here involved and as this term was used in this policy includes all the various activities which together constitute the carrying on of the business; and all the

employees as well as the manager, whether on the sales floor, soliciting prospects on the street, in the accounting department, in the repair shop, or delivering storage cars to the customer owner, are all engaged in the 'operation' of such garage.''

Since it appears that the activity in which Burnett was engaged at the time the accident occurred fell within the terms of the exclusion, the court's decision declaring Burnett's liability to be covered by the terms of appellants' policy and excluded under the terms of respondent's policy is therefore correct.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.