GILBERT HUNT, PLAINTIFF-APPELLANT, v. HOSPITAL SERVICE PLAN OF NEW JERSEY AND MEDICAL-SURGICAL PLAN OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued June 6, 1960—Decided June 28, 1960.

*Mr. Saul J. Zucker* argued the cause for plaintiff-appellant (*Messrs. Kristeller, Zucker, Lowenstein & Cohen,* attorneys).

*Mr. Frederick A. Frost* argued the cause for defendant-respondent, Hospital Service Plan of New Jersey (*Messrs. Pitney, Hardin & Ward,* attorneys).

*Mr. William R. Vanderbilt* argued the cause for defendant-respondent Medical-Surgical Plan of New Jersey (*Messrs. Toner, Crowley, Woelper & Vanderbilt,* attorneys).

The opinion of the court was delivered by

FRANCIS, J.   This appeal presents a single question for decision, *i. e.,* the proper construction of substantially similar

exclusionary clauses in a hospital service insurance policy issued by defendant, Hospital Service Plan of New Jersey, and in a medical-surgical service insurance policy issued by defendant, Medical-Surgical Plan of New Jersey. Plaintiff, holder of a family coverage type contract of each organization, sought to compel payment of certain hospital and medical bills incurred on behalf of his wife. If the exclusionary clauses are not applicable, the bills are otherwise clearly within the companies' undertaking. The trial court concluded that the exclusions were controlling and denied recovery. 59 *N. J. Super.* 219 (*Law Div.* 1960). Certification was granted by us while the matter was pending in the Appellate Division.

The record indicates that on September 18, 1956 Emily Hunt, wife of the policyholder-plaintiff, was employed as a saleslady by W. T. Grant Co. in Plainfield, New Jersey. On that day, while lifting a roll of oilcloth onto a shelf, she felt a pain in her back. She ceased working on September 19, and on September 25 entered the Muhlenberg Hospital in Plainfield for treatment of what appears to have been a serious back condition. The attending doctors and the hospital were selected by plaintiff and his wife. They were not furnished by the employer who had notice of the claimed facts of the employment incident at least as early as "about September 26, 1956."

A series of hospitalizations and considerable medical and surgical treatment followed thereafter, and continued through the middle of January 1958. Some of the earlier bills were paid by defendants before any problem arose as to whether Mrs. Hunt was entitled to workmen's compensation. It is plain, however, that during this period the employer neither assumed responsibility for her care nor paid any compensation to her. It does appear that on July 18, 1957, ten months after the employment incident, at an informal hearing the insurance carrier of the employer denied that she had a compensable claim, and refused to pay compensation benefits or any of her bills. Shortly thereafter she filed a

formal petition, through an attorney, seeking compensation for temporary and permanent disability and the payment of all medical and hospital obligations. The bills accrued up to that time, except for those already paid, were forwarded to the defendants. Because of the exclusionary clauses to be set forth presently, the insurers declined payment pending the outcome of the hearing in the Division of Workmen's Compensation.

At the hearing the Deputy Director found that Mrs. Hunt had suffered an accident arising out of and in the course of her employment, and that her claim was therefore compensable. So he directed payment of benefits for 35-4/7 weeks temporary disability and for 192½ weeks representing 35% of partial total permanent disability. With respect to the medical treatment and hospitalization the judgment recited:

"Unpaid medical bills: All medical and hospital treatments rendered petitioner as result of the accident of 9/18/56 were not authorized, and *are not compensable* and are not chargeable against respondent.

\*     \*     \*     \*     \*     \*     \*     \*

I specifically find that all medical and hospital treatments rendered petitioner as the result of the aforesaid accident were not authorized, *are not compensable* and not chargeable against respondent." (Emphasis added)

On receipt of this judgment, defendants disclaimed liability for payment of the bills on the ground that, although they were declared non-compensable by the Division of Workmen's Compensation, they were compensable within the contemplation of the exclusionary clauses of their policies.

The Hospital Service Plan contract provides:

"Section V.    Services Not Eligible.
The Plan shall not be liable, nor is Plan payment eligible.
(1) For hospital services rendered etc.
              (specifying a particular exclusion).
(2) For hospital services rendered etc.
              (specifying a particular exclusion).

(3) For hospital services rendered etc.
　　　　　(specifying a particular exclusion).
(4) For any sickness, disease or injury occurring during military service, *or for which hospital services are in whole or in part compensable under any State* ＊ ＊ ＊ *workmen's compensation law* ＊ ＊ ＊*."* (Emphasis added)

The Medical-Surgical Plan policy says:

"Section V. Services not eligible.
　The Plan shall not be liable for payment:
　(1) For services rendered etc. ＊ ＊ ＊
　　　　　(specifying a particular exclusion).
　(2) For services rendered etc. ＊ ＊ ＊
　　　　　(specifying a particular exclusion).
　(3) For services rendered etc. ＊ ＊ ＊
　　　　　(specifying a particular exclusion).
　(4) For services rendered etc. ＊ ＊ ＊
　　　　　(specifying a particular exclusion).
　(5) For services rendered for any sickness, disease or injury occurring while the person is on active duty during military service, *or for which the services are in whole or in part compensable under any State* ＊ ＊ ＊ *workmen's compensation law* ＊ ＊ ＊*."*
(Emphasis added)

Both of the clauses set forth clearly undertake to exclude medical and hospital *services* which are "compensable" under the workmen's compensation law. Defendants point out that under that act whenever an employee sustains an accident arising out of and in the course of the employment, the employer is obliged to furnish necessary hospital and medical treatment. Consequently, they urge that if an accident appears which fits the legislative description, the treatment bills must be considered "compensable" within the meaning of their policies, whether or not they in fact qualify for payment under the statute.

██ The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful im-

port are strictly construed against the insurer. *Boswell v. Travelers Indemnity Co.,* 38 *N. J. Super.* 599, 605 (*App. Div.* 1956); *Schneider v. New Amsterdam Cas. Co.,* 22 *N. J. Super.* 238 (*App. Div.* 1952).

It seems to us that there are two reasonably supportable views as to the significance of the word "compensable" as it is used in its present context. One is that it connotes hospital and medical services of the type declared payable or "compensable" as an incident of an injury of the type entitled to benefits under the Workmen's Compensation Act. That position is advanced by the defendants who say that under such a construction it is of no consequence that for some additional technical condition imposed by the Legislature the particular services do not qualify for payment by the employer. The other view is that to be "compensable" in the contemplation of these insurance contracts, the services not only must be of the type covered by the compensation act but, as between the insurer and insured in the particular case, must in fact qualify for and require payment by the employer.

In our judgment, the problem of interpretation here cannot, and in justice should not, be dealt with in terms of a generality. To adopt defendants' claim would deprive the plaintiff of the protection he paid for in the face of a declaration by the tribunal charged with administering the compensation act that his wife's medical bills did not meet the test prescribed to make them payable, *i. e.,* that they were not "compensable." To make such bills payable, that is, compensable in the sense that it is within the competence of a Deputy Director to order them paid, it is not sufficient that they follow in the wake of an employment connected injury. Rather, they must meet their own condition precedent. They must have been authorized by the employer (except where authorization is refused or neglected, an issue not pertinent in this case). See *R. S.* 34:15–15. If they are not authorized they are not "compensable," that is, able to be compensated for; they do not warrant compensation.

It is perfectly natural and commonplace to speak of a hernia in a particular case as not being compensable when the required notice of its appearance was not given to the employer within 48 hours. The same conclusion would follow where timely notice of the accident was not given, or because the petition for compensation was not filed in time. Such cases do not qualify for payment of compensation benefits by reason of failure to meet the conditions imposed by the act. All of those instances are of the *type* legislatively declared compensable, but we have no doubt that a Deputy Director deciding any one of them might very well say, in denying benefits—as was done in this case—that it is not a compensable claim. This sense of the term may be found in the Temporary Disability Benefits Law (*N. J. S. A.* 43:21–25 *et seq.*) which provides that incapacity thereunder shall be compensable where a covered individual suffers an accident or injury not arising out of and in the course of his employment, "or if so arising not compensable under the workmen's compensation law * * *." *N. J. S. A.* 43:21–29. See, *Janovsky v. American Motorists Ins. Co.*, 11 *N. J.* 1 (1952). For example, in the hernia illustration mentioned above, the condition, not being "compensable" under the workmen's compensation act on account of the deficient notice, would justify payment of disability benefits under the other enactment (if otherwise qualified).

Viewed in the light of these practical considerations, plaintiff's hospital and medical bills cannot be said to represent compensable services within the meaning of defendants' policies. And the contracts so regarded fairly breathe, as their basic motive in excluding such compensable services, a desire to avoid duplicate or double payment of the bills to the insured. Accordingly, the more reasonable choice of alternative constructions of the policy language is that it excludes only those hospital and medical services which are in fact compensable; that is, those which in the particular case require an order directing their payment as

compensation under the terms and conditions of the workmen's compensation act and actually are paid pursuant thereto. We agree that in compensable cases the primary obligation to provide and to pay for medical and hospital treatment is on the employer, and that the Hospital and Medical-Surgical Plans should not be called upon to pay for the care where liability of the employer in fact exists under the conditions laid down by the Legislature. This thought is reflected in the 1953 supplement to the Workmen's Compensation Act, *L.* 1953, *c.* 207, § 1; *N. J. S. A.* 34:15–15.1, which was obviously designed to establish a means for reimbursing the Plans where they have paid the bills for treatment and subsequently a workmen's compensation award is made against the employer. In such cases this legislation authorizes the Deputy Director to include in his order or judgment a provision imposing on the employer or his insurance carrier a duty to reimburse where payment has already been made. The introducer's statement attached to the bill clearly portrays the intent:

"The purpose of this supplement is to prevent an employer or its carrier [workmen's compensation insurance carrier] from reaping the benefit of having medical, surgical or hospital expenses, for which it is liable under the act, from being relieved thereof by reason of any hospitalization, insurance or other plan which petitioner may have carried personally and for which he paid the premium or dues * * *." *Revised Statutes Cumulative Supplement, p.* 918. (Insertion ours)

But just as the Plans are entitled to be made whole where they have satisfied an obligation which primarily belongs to another, so too they should not be relieved of providing the benefits paid for by their insured unless it cannot be said through any fair interpretation of the language of their policies that the condition upon which the exclusion of liability is predicated does not exist. If the intention was to bar payment for medical or hospital services made necessary by accidental injury arising out of and in the course of the

insured's employment, it would have been very simple to use appropriate unambiguous words to accomplish the result.

Research has failed to disclose any case throughout the country in identity with this one. In a somewhat analogous setting, however, the view was expressed that clauses of the character involved here are designed to avoid double payment. In *Schweigert v. Beneficial Standard Life Insurance Co.*, 204 *Ore.* 294, 282 *P.* 2d 621 (*Sup. Ct.* 1955), a hospital, surgical and medical benefits policy excluded "any loss for which benefits are provided in any workmen's compensation or employer's liability law." The insured was injured and brought suit against his employer under the Oregon Employers' Liability Act, *O. R. S.* 654, 305 *et seq.* The claim was settled. The insurer then refused payment of the expenses incurred for treatment of the injuries on the ground that they represented a "loss for which benefits are provided in [the] * * * employer's liability law." The insured maintained correctly, the court declared, that the word "benefits" meant a tangible monetary advantage flowing directly to the employee, such as the mandatory benefit under the workmen's compensation law. The insurer did not contend that any such advantage flowed from the employers' liability law or that any benefits accrued thereunder as indemnity for hospital, surgical or other expenses. It argued, however, that the word "benefits" clearly comprehended the intangible benefits which are conferred on an individual who seeks redress under that law. These benefits were said to be the denial to the employer of the common-law defenses of the fellow servant doctrine, contributory negligence and assumption of risk. The court agreed that the term "benefits" in the popular sense may be broad enough to include such intangible advantages but if it appeared from the framework of the insurance policy that the word was used in a special sense, such an interpretation would be adopted. It was then pointed out that "benefits" appeared in a number of places in the policy and in each instance it patently related to specific monetary payments

for various kinds of medical, surgical, hospital and other expenses. In rejecting the denial of liability, the court said:

"It is our holding that the word 'benefits', as used in the clause reading 'This policy does not cover any loss for which benefits are provided in any workmen's compensation or employer's liability law', is there employed with the same meaning as it so obviously has where first used in the forepart of the policy, i. e., as monetary indemnities for certain costs incident to hospital, surgical and medical treatment resulting from bodily injury to the insured, and *that the purpose of the foregoing clause was to avoid making duplicate payments for like benefits, if any, which the insured had received or might receive under any workmen's compensation or employers' liability law.* There being no monetary benefits or indemnities of any kind provided for under the Employers' Liability Law in this state, it follows that the action brought [by plaintiff] against his employers, even though framed under the Employers' Liability Law, did not operate as a bar to his recovery on the insurance policy in the instant action." 282 *P. 2d*, at *p.* 626. (Insertion ours and emphasis added)

A somewhat closer similarity is to be found in *Rose v. Franklin Surety Co.,* 281 *Mass.* 538, 183 *N. E.* 918 (*Sup. Jud. Ct.* 1933). There decedent was a helper on a truck being driven by a fellow employee on their employer's business. An accident occurred in which the helper was killed. The employer had no workmen's compensation insurance and apparently was unable to pay any such benefits; however, he did carry statutory compulsory liability insurance on the truck. Decedent's administrator sued the truck driver, obtained a judgment and then sought to compel payment under the liability policy. The carrier defended under an exclusion which barred recovery by " 'employees of the insured or of such other person responsible as aforesaid who are entitled to payments or benefits under the provisions' of the Workmen's Compensation Act." 183 *N. E.,* at *p.* 919.

In the course of the opinion the court said that since the employer was not insured under the Workmen's Compensation Act, *M. G. L. A. C.* 152, decedent was not a person entitled to any "payments" of compensation or to any payments under that act. It declared also that "benefits" meant

medical and hospital services and burial expenses. And in construing the exclusion quoted above the opinion continued:

"The words under consideration must be construed in the light of the dominant purpose of the statute in which they appear, that is, the provision of security for the collection of damages suffered without fault by travellers on the highway through the negligent operation of motor vehicles. The reason why the employees of one who is insured under the Workmen's Compensation Act are properly excluded from participation in the security afforded by the compulsory insurance statute is that such employees already have under the Workmen's Compensation Act 'certainty of payment and exoneration from expenses and delay incident to an action at law.' Opinion of the Justices, 251 *Mass.* 569, 603, 147 *N. E.* 681, 696. That act provides no such certainty or exoneration to the employees of one not insured under its provisions. Since the plaintiff's intestate was not an employee who by the terms of the compulsory insurance statute was excluded from participation in the security which the statute provides, final decree was rightly entered for the plaintiff." 183 *N. E.*, at *p.* 919.

For the reasons stated, we conclude that the word "compensable" was not used in defendants' contracts in a sense which would work a forfeiture of the purchased security of payment of medical and hospital bills. Rather it was used to signify an exclusion of payment in the event that the bills qualified for payment under the workmen's compensation law and were in fact paid through that source. Accordingly, the judgment of the trial court is reversed. Since the amounts involved have been stipulated in the event of liability at $1,821.45 due from the Hospital Service Plan, and $737.50 from the Medical-Surgical Plan, the matter is remanded for the entry of judgments in favor of the plaintiff in those amounts.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.