[L.A. No. 30144. In Bank. May 10, 1974.]

ENRIQUE SILBERG, Plaintiff and Appellant, v.
CALIFORNIA LIFE INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

John C. McCarthy and Young, Henrie & McCarthy for Plaintiff and Appellant.

Cooley, Godward, Castro, Huddleson & Tatum, Frank D. Tatum, Jr., James A. Richman and Tom E. Pollock III for Defendant and Appellant.

Adams, Duque & Hazeltine, Thomas F. Call and Edward L. Lascher as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**MOSK, J.**—We are called upon to interpret the provisions of an insurance policy issued to plaintiff by defendant company and the scope of defendant's duty to make payment thereunder. The policy provided that defendant would pay the cost of hospital care, including surgeon's fees, up to a limit of $5,000, with $100 deductible, and there was an exclusion for losses caused by injuries for which compensation was payable under any workmen's compensation law.

In July 1966, while the policy was in effect, plaintiff was seriously injured and as a result ultimately incurred $6,900 in medical charges. Defendant carrier refused to make any payments under the policy because plaintiff had filed a claim for workmen's compensation benefits on account of the injury. The company insisted there could be no final determination as to its liability under the policy until the workmen's compensation proceeding was concluded. At the same time, the workmen's compensation carrier denied liability because of defendant's questionable employment status. The compensation aspect was ultimately determined on April 30, 1968—nearly two years after the injury—when a compromise and release was approved by the Workmen's Compensation Appeals Board, settling the case for $3,700; of this recovery $1,100 was in payment of hospital bills through a lien filed by one hospital, the balance of $5,800 in hospital bills remaining unpaid. Defendant denied liability under the policy on the ground that the $3,700 paid under the compensation settlement rendered the exclusion applicable.

Plaintiff filed this action, alleging two causes of action: the first sought a declaration that defendant was liable under the policy, and the second sought damages for physical and mental distress. It was alleged that defendant was guilty of fraud, bad faith and malicious and oppressive conduct, and that plaintiff was entitled to both compensatory and punitive damages.

Initially, the trial court, sitting without a jury, determined in the declaratory relief count that the policy was ambiguous and that, therefore, defendant was obligated under the policy to pay $4,900 of plaintiff's medical costs (the policy limits minus the $100 deductible). A jury found for plaintiff on the second cause of action, and awarded $75,000 compensatory damages and $500,000 punitive damages. After judgment on the verdict was rendered, the trial court granted defendant's motion for a new trial on the grounds of insufficiency of the evidence to support the verdict, error in law, and excessive damages. Plaintiff appeals from the order granting the new trial, and defendant cross-appeals from the judgment. (Cal. Rules of Court, rule 3(c).)

The major issues involved in plaintiff's appeal from the order granting a new trial are whether the trial court abused its discretion in concluding that the evidence was insufficient to support a finding defendant was guilty of bad faith justifying an award of compensatory damages, or of fraud or oppression justifying an award of exemplary damages. We determine that the evidence demonstrates as a matter of law that defendant's failure to pay benefits under the policy constituted bad faith but that the trial court did not abuse its discretion in ruling that the evidence was insufficient to support an award of exemplary damages. In defendant's appeal from the judgment, our inquiry focuses primarily upon whether the trial court properly found in the first cause of action that the policy was ambiguous. We conclude the trial court judgment was correct in this regard.

*Plaintiff's Appeal*

At the time of the accident, plaintiff was 38 years old and the father of two minor children. He owned and operated a dry cleaning business, and earned a monthly income of $500. Plaintiff's landlord owned a laundromat adjacent to the dry cleaning premises. Although not entirely clear from the record, plaintiff apparently agreed with his landlord that, in return for a reduction in rent, he would perform incidental services in connection with the laundromat operation. On July 17, 1966, plaintiff noticed smoke in the laundromat area, and in order to locate its source he climbed onto a washing machine. The glass in the lid of the machine broke; plaintiff's right foot fell into the machine, which was in operation at the time. His foot was severed at the ankle but was surgically restored later that day.

Upon his admission plaintiff advised the hospital that he was insured by defendant, and he notified defendant of the accident within a few days. Defendant immediately sent a routine inquiry to an investigative bureau to determine whether plaintiff had ever previously sought insurance benefits. In the claim forms subsequently filed by plaintiff, he declared that he was self-employed and that he had instituted proceedings to obtain workmen's compensation benefits. Medical bills for the first hospitalization were received by defendant by early September.

Plaintiff developed an infection in his foot, and further surgery was required. On October 3 he entered another hospital. In his testimony at the trial he claimed that he was unable to return to the hospital where the prior surgery had been performed because its bill remained unpaid. Upon the second admission plaintiff again named defendant as his insurer, and the charges for hospital and surgical services were sent to defendant.

Defendant initially failed to explain to either plaintiff or the hospitals

the cause of the delay in making payment, but wrote an adjuster in Los Angeles, requesting him to determine whether plaintiff was covered by workmen's compensation. The letter conceded that workmen's compensation coverage was questionable because plaintiff was the owner-operator of a cleaning plant. The adjuster was also instructed that, in the event workmen's compensation did not cover the injury, he should review plaintiff's medical history for the 10 years prior to the injury. Defendant explained that the purpose of the exhaustive inquiry was to determine if plaintiff might have been uninsurable at the time of the injury. That is, in the event plaintiff had falsified his application in any respect or omitted to mention that he had some prior serious illness such as heart trouble or cancer, defendant could, on the basis of the misrepresentation, rescind the policy, even though such illnesses were not involved in plaintiff's claim.

The adjuster replied in mid-November that the workmen's compensation carrier denied coverage on the ground plaintiff was not an employee at the time of the injury, and that a hearing would be held by the Workmen's Compensation Appeals Board in December to determine the issue. The December hearing was continued to February 1967.

Throughout this period, plaintiff and a representative of the insurance agency through which he had purchased the policy made persistent inquiries regarding his claim, and the hospitals at which he had been treated also expressed impatience with the delay in receiving payment. In November and December defendant informed plaintiff as well as the hospitals that there was a question whether plaintiff was covered by workmen's compensation at the time of the injury, and that until the matter was resolved his benefits under the policy would be withheld.

In April 1967, defendant forwarded its claim file to the Workmen's Compensation Appeals Board in response to a subpoena duces tecum. No further action was taken by defendant until April 1968, when plaintiff's attorney wrote defendant that the workmen's compensation proceeding had been settled by compromise and release because the evidence was in conflict as to whether plaintiff's injury occurred in the course of employment. The attorney stated that since no formal findings of workmen's compensation coverage had been made by the board, defendant was liable under the policy. Defendant denied liability on the ground that the exclusion was applicable because plaintiff had received payment under the workmen's compensation law. It offered to settle the claim for $200 "to avoid litigation." The offer was rejected.

Plaintiff's condition continued to deteriorate after his second hospitalization. In June 1967 he had a third operation, which was performed at the

same hospital as the second surgery. The hospital refused to admit him unless he paid $500 of his previous bill. A fourth operation was performed in April 1968, this time at another hospital, since the hospital at which the second and third operations had been performed refused to accept plaintiff as a patient. Plaintiff was also compelled to engage a different surgeon because the surgeon who had previously operated on him had not been paid. In order to obtain the needed surgery plaintiff resorted to a ruse. He entered the hospital on a Saturday, the operation to be performed on Sunday, so that the hospital administrators would not be able to discover over the weekend whether insurance coverage existed. Plaintiff again named defendant as his insurer.[1]

Shortly after his injury defendant borrowed $2,000 to pay business expenses. Ultimately, he lost his business and could not borrow additional funds because unpaid hospital and medical bills established him to be a poor credit risk. He was compelled to change the place of his residence five times during this period because of lack of funds to pay rent. His utilities were turned off several times for nonpayment, his wheelchair was repossessed, and he had difficulty in affording medication to ease his constant pain. Ultimately, in 1969 plaintiff suffered two nervous breakdowns. A psychiatrist testified that plaintiff's concern over inability to meet medical expenses contributed to these episodes.

At the trial, the manager of defendant's claims department testified that defendant refused to pay the medical expenses plaintiff incurred in 1966 because it was awaiting the outcome of the workmen's compensation proceeding in order to determine whether there was liability under the policy.

The evidence was in sharp conflict as to the custom in the insurance industry regarding the payment of a claim for hospital benefits in these circumstances. Several witnesses for defendant testified that during pendency of a workmen's compensation proceeding, it was customary to deny benefits or to suspend judgment on an insured's claim under a hospital care policy until the question of workmen's compensation coverage was finally decided. A witness for plaintiff testified, on the other hand, that the prevailing practice was to pay the insured's claim if the workmen's com-

---

[1]When the hospital sent the bill for the fourth operation to defendant in April 1968, defendant wrote in response that plaintiff's policy had not been in force for more than a year. As we shall see, defendant took the position that it was not liable for the cost of plaintiff's hospitalization after January 1, 1967, because the policy had lapsed on that date for nonpayment of premiums. This contention will be discussed in the context of defendant's appeal from the judgment on the jury's verdict.

pensation carrier denied liability and the insured had suffered severe injuries. Thus, he stated, if no workmen's compensation award was ultimately ordered the payments under the policy would have been properly made, and if benefits were awarded, the insurer could impose a lien on the sums to be paid in the workmen's compensation proceeding.[2]

### Compensatory Damages

In its order granting a new trial, the trial court found, for the reasons set forth in the margin, that the evidence was insufficient to justify a finding of bad faith.[3] ■ It is not necessary to analyze these reasons in detail because, in our view, the evidence shows as a matter of law that defendant breached the covenant of good faith and fair dealing implied in every insurance contract by its failure to make payments under the policy and that, therefore, it was liable for the physical and mental distress proximately caused by its conduct.

■ The principle was firmly established in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-660 [328 P.2d 198, 68 A.L.R. 2d 883], and *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429-433 [58 Cal.Rptr. 13, 426 P.2d 173], that the duty of an insurer to accept a reasonable settlement so as to absolve its insured of liability to a third person is implied in the covenant of good faith and fair dealing which exists in every insurance contract. The covenant requires that neither party will do anything to injure the right of the other to receive the benefits of the agreement, and an insurer is obligated to give the interests of the insured at least as much consideration as it gives to its own interests. Violation of the duty of the insurer sounds in tort, we held, and an insured may recover for all detriment resulting from such violation, including mental

---

[2]Another alternative customarily utilized, according to plaintiff's witness, was for the insurer on the hospital benefit policy to attempt to reach an informal agreement for reimbursement with the workmen's compensation carrier.

[3]"The evidence was insufficient to support the verdict. The plaintiff was injured in July of 1966. A workmen's compensation claim was filed by him in August of 1966. That matter was pending until April 30, 1968, at which time it was settled by compromise and release. [¶] There was no evidence that at the time the policy was issued the defendant knew or should have known how a Court would rule on this set of facts or that they made any misrepresentation to him on which he relied. In researching the case neither counsel nor the Court found any case specifically on point that they would have been on notice of at the time of issuance of the policy. [¶] Similarly there was insufficient evidence of any custom or usage in the industry at that time to justify any such finding or to impose any duty on the defendant to pay the proceeds of its policy and then assert a lien claim. [¶] There was no sufficient evidence for the jury to determine that the defendant asserted its claim of defense in bad faith, considering the language of the policy, or that the defendant was guilty of oppressive conduct, misrepresentation or bad faith."

distress. These principles have been extended to cases in which the insurer unreasonably and in bad faith withholds payment of the claim of the insured. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal. Rptr. 480, 510 P.2d 1032]; *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 239 [102 Cal.Rptr. 547] (disapproved on another ground in *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, at fn. 10, pp. 580-581); *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

In the present case, the company's policy application declared in large, heavy type, "Protect Yourself Against the Medical Bills That Can Ruin You." Plaintiff's application, filed shortly before the accident, indicated that he had no other hospital or disability insurance and, indeed, the manager of defendant's claims department testified that the policy would not have been issued if plaintiff had other hospital insurance. Defendant was aware that plaintiff earned only a modest income and had incurred substantial medical and hospital bills. The company also knew that there was a serious question whether plaintiff would qualify for workmen's compensation benefits, and that the compensation carrier had consistently denied coverage on the ground that plaintiff was not an employee at the time of the accident.

There is no question that if defendant had paid the hospital charges and it was ultimately determined workmen's compensation covered the injury, defendant could have asserted a lien in the workmen's compensation proceeding to recover the payments it had made and it would have been entitled to payment from the proceeds of the award. (Lab. Code, § 4903, subd. (b); *Foremost Dairies* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 560, 579 [47 Cal.Rptr. 173]; *Gerson* v. *Industrial Acc. Com.* (1961) 188 Cal.App.2d 735, 739 [11 Cal.Rptr. 1]; see also Rules of Practice & Procedure, Workmen's Comp. App. Bd., art. 15, § 10886.) Indeed, some of the medical bills incurred by plaintiff were paid by the allowance of a lien from the settlement obtained in the workmen's compensation proceeding.

No explanation was advanced by defendant as to why it failed to adopt this course in order to vindicate the promise made in the application that the policy was intended to protect the insured against medical bills which could result in financial ruin. Defendant's attitude toward the payment of plaintiff's claim was expressed in the declaratory relief phase of the case: merely that it was entitled to wait until the pending compensation proceeding was concluded before it paid or denied the claim. The company failed to see a conflict with its express promise to protect against ruinous medical bills.

Although the evidence was in conflict on the issue whether it was customary in the insurance industry to make payments under the policy in these circumstances and the order granting a new trial declared there was insufficient evidence of such a custom, the failure to establish common practice in this regard cannot absolve the insurer. ■ The scope of the duty of an insurer to deal fairly with its insured is prescribed by law and cannot be delineated entirely by customs of the insurance industry.

■ Under these circumstances defendant's failure to afford relief to its insured against the very eventuality insured against by the policy amounts to a violation as a matter of law of its duty of good faith and fair dealing implied in every policy. Thus, we conclude the trial court abused its discretion in granting a new trial on the ground that the evidence was insufficient to support a finding that plaintiff is entitled to compensatory damages.

■ In granting a new trial, the court also indicated that the damages were excessive. However, the order failed to state any reason for this ground other than the declaration that the evidence did not justify an award of $75,000 in compensatory damages "for the reasons stated above." Since "the reasons stated above" (see fn. 3, *ante*) did not refer to whether damages awarded by the jury were disproportionate to the injuries suffered by plaintiff but, rather, to whether the evidence justified a finding of bad faith or oppression, the reasons advanced by the trial court for finding the damages to be excessive are clearly inadequate. (See Code Civ. Proc., § 657; *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 111 et seq. [65 Cal.Rptr. 315, 436 P.2d 315]; *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363 et seq. [90 Cal.Rptr. 592, 475 P.2d 864].) The trial court's order must be reversed insofar as it determines that plaintiff was not entitled to compensatory damages and that an award of $75,000 for such damages was excessive.

*Exemplary Damages*

■ It does not follow that because plaintiff is entitled to compensatory damages that he is also entitled to exemplary damages. In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice. (Civ. Code, § 3294.) He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights. (*Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 647 et seq. [198 P.2d 1] (overruled on another ground in *Flores* v. *Arroyo* (1961) 56 Cal. 2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]); *Roth* v. *Shell Oil Co.* (1960) 185 Cal.App.2d 676, 682 [8 Cal.Rptr. 514].) While we have concluded that defendant violated its duty of good faith and fair dealing, this alone

does not necessarily establish that defendant acted with the requisite intent to injure plaintiff.

■ In granting a new trial the trial court stated that the evidence was insufficient to justify an award of punitive damages because defendant was not put on notice by cases previously decided that its interpretation of the policy was incorrect and because there was insufficient evidence of a practice in the insurance industry to pay a disputed claim and then file a lien in the workmen's compensation proceeding to recover the payments made. The trial court's conclusion that defendant was not guilty of oppressive conduct did not constitute a manifest and unmistakable abuse of discretion. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].) Therefore, the order granting a new trial must be affirmed insofar as it determines that the evidence was insufficient to justify the award of punitive damages.

In view of our conclusion that plaintiff was entitled to compensatory damages as a matter of law but that the trial court did not abuse its discretion in holding that the evidence was insufficient to support a finding of exemplary damages, we need not reach two errors of law which the trial court specified as additional reasons in support of its order.[4]

*Defendant's Appeal*

In its appeal from the judgment on the jury's verdict, defendant contends that the trial court erred in the declaratory relief phase of the case in finding the policy to be ambiguous and in awarding plaintiff $4,900 in benefits thereunder.

Two separate clauses of the policy are involved on the issue of liability. The first is the insuring clause. It provides "subject to the exceptions, limitations and provisions of this policy [defendant] promises to pay for loss, except losses covered by any Workmen's Compensation . . . Law . . . covered by this policy and sustained by the insured . . . resulting from injury or sickness; . . ."

The second relevant provision is the exclusionary clause, which states, "EXCLUSIONS. This policy does not cover any loss caused by or resulting from (1) injury or sickness for which compensation is payable under any Workmen's Compensation . . . Law."

---

[4]The court's specification of reasons stated that it was error to fail to instruct that an award of exemplary damages must bear a reasonable relation to actual damages. The court also concluded that it should have instructed to what extent, if any, the jury might take into consideration the court's ruling in favor of plaintiff on the first cause of action.

Plaintiff contends, and the trial court found, that the insuring clause could be interpreted to mean that payments would be made under the policy even though plaintiff also recovered workmen's compensation benefits if workmen's compensation did not meet his total medical expenses. That is, defendant was required to pay hospital charges not covered by workmen's compensation payments. Defendant, on the other hand, claims that the insuring clause must be read in conjunction with the exclusionary clause, and that the latter provision makes it plain that if workmen's compensation benefits in any amount are received by the insured, then defendant is not required to make any payments whatever under the policy.

The trial court construed the policy in the light of the familiar rule that any ambiguities in an insurance policy must be read against the insurer. (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 878 [103 Cal. Rptr. 865, 500 P.2d 889].) It determined that the word "loss" in the insuring clause could mean compensable expense and, if so, defendant was required to pay hospital expenses not covered by workmen's compensation. We agree with this construction. The application for the policy declared in large, capital letters, "ALL BENEFITS PAYABLE IN FULL REGARDLESS OF ANY OTHER INSURANCE YOU MAY HAVE." This assurance implies at the very least that the receipt of workmen's compensation payments, comparable to "other insurance" payments, would not entirely vitiate defendant's liability under the policy.

Thus, the provision in the insuring clause that defendant would pay for "loss, except losses covered by . . . Workmen's Compensation" rationally means that defendant promised to pay such hospital expenses incurred by plaintiff as were not paid by workmen's compensation, up to the policy limits.

Defendant relies heavily upon the language of the exclusionary provision, which excludes liability for "any loss caused by or resulting from . . . injury . . . for which compensation is payable under any Workmen's Compensation . . . Law . . . ." This provision does not clearly absolve defendant of liability if plaintiff receives any amount in workmen's compensation benefits, particularly since it must be read in conjunction with the insuring clause, which requires defendant to pay expenses not covered by workmen's compensation. At best, even acquiescence in defendant's interpretation of the exclusion would merely result in a conflict between the exclusionary and the insuring clauses. Under prevailing law that conflict must be resolved in plaintiff's favor.[5]

---

[5]The trial court found that the exclusionary clause did not apply where, as here, the workmen's compensation proceeding terminated by compromise and release. Defendant disputes this conclusion, asserting that payments under a compromise and

Defendant relies upon a number of cases to support its assertion that the policy is not ambiguous. However, with one exception these decisions involved provisions at variance with those in the present case. (E.g., *Laing v. Occidental Life Ins. Co.* (1966) 244 Cal.App.2d 811 [53 Cal.Rptr. 681]; *Wenthe v. Hospital Service, Incorporated, of Iowa* (1960) 251 Iowa 765 [100 N.W.2d 903].) In *Bonney v. Citizens' Mut. Auto. Ins. Co.* (1952) 333 Mich. 435 [53 N.W.2d 321], the policy contained a provision similar to the exclusion here. But there was no inconsistency between that provision and another clause of the policy, as in the present case, and the decision merely held that the exclusion applied to persons eligible for workmen's compensation benefits whether or not they had actually received such benefits.

There is a penultimate problem involving the policy provisions: whether defendant's liability terminated as of January 1, 1967, because plaintiff did not pay the premium due on that date. The relevant provision states, "When as the result of injury or sickness and commencing while covered hereunder, any member . . . is necessarily confined in a hospital, the Company will pay, subject to the above limitation, [various specified expenses]." Defendant interprets this provision as meaning that the injury and the hospitalization must both occur while the policy is in effect in order to entitle the insured to benefits and that defendant was not liable for those expenses which were incurred by plaintiff after the policy lapsed for nonpayment of premium on January 1, 1967.

█ The trial court found that the provision meant that if the insured was injured while the policy was in effect defendant would pay hospital expenses during the term of the policy even though the actual hospitalization for the injury occurred after the policy had been deemed to lapse for nonpayment.[6]

At best, the provision is ambiguous. It can reasonably be interpreted to mean that payments would be made if the *injury* commenced during the

---

release are "compensation" and are therefore within the ambit of the exclusion. (Citing *Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal. App.2d 991 [58 Cal.Rptr. 159], and *Aetna Life Ins. Co.* v. *Ind. Acc. Com.* (1952) 38 Cal.2d 599 [241 P.2d 530]. We need not determine the merits of this claim in view of the conclusions we have reached above.

[6]Defendant complains that the trial court misread the provision as though a comma had been printed after the word "When" and as if the word "and" had been deleted. That is, claims defendant, the court rewrote the sentence to read, "When, as the result of injury or sickness commencing while covered hereunder, any member . . . is necessarily confined" etc. The court interpreted the phrase "subject to the above limitations" to include, inter alia, the limitation that the policy was for a two-year term.

life of the policy. Under settled rules of construction, the provision must therefore be interpreted against defendant.

Finally, defendant argues at length on its appeal that plaintiff's injuries arose out of and in the course of his employment and that the exclusion was therefore applicable. Since we have found the policy to be ambiguous in this regard, we need not discuss this factual contention. ▮ It should also be noted that defendant asserts the trial court improperly denied its motion for judgment notwithstanding the verdict. Although the denial of such a motion is appealable (Code Civ. Proc., § 904.1, subd. (d)), defendant failed to file a notice of appeal from the order denying its motion. (Cal. Rules of Court, rule 1(a).)[7]

The order granting a new trial is reversed insofar as it grants a new trial on defendant's liability for compensatory damages and the amount of compensatory damages, and in all other respects the order is affirmed. On defendant's cross-appeal, the judgment is affirmed insofar as it awards $75,000 in compensatory damages and $4,900 as benefits under the policy. Plaintiff is to recover costs on appeal.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent. The exclusionary clause in question is clear and unambiguous and controls the interpretation of the policy. There being no ambiguity in the terms of the exclusionary clause, its provisions must be effectuated. (*Canadian Indem. Co.* v. *West. Nat. Ins. Co.* (1955) 134 Cal. App.2d 512, 516-517 [286 P.2d 532].)

The exclusionary clause provides: "This policy does not cover any loss caused by or resulting from (1) injury or sickness for which compensation is payable under any Workmen's Compensation or Occupational Disease Law. . . ." The only reasonable interpretation of this language is that coverage of the policy is excluded whenever compensation is available for the injury or sickness, whether or not available compensation would cover all expenses.[1] No other interpretation is permissible since "payable," mean-

---

[7]Defendant's notice of appeal specified only "the judgment as originally entered," i.e., the judgment on the jury's verdict.

[1]Other jurisdictions which have had opportunity to rule on this issue have found the exclusionary clause to deny coverage for any injury for which any amount of workmen's compensation benefits is payable. (See *Keffer* v. *Prudential Insurance Company of America* (1970) 153 W.Va. 813 [172 S.E.2d 714]; *Phillips* v. *Prudential Ins. Co.* (1970) 285 Ala. 472 [233 So.2d 480]; *Wenthe* v. *Hospital Service Incorporated, of Iowa* (1960) 251 Iowa 765 [100 N.W.2d 903]; *Sinai Hospital of Detroit* v.

ing that which "may, can, or must be paid" (Webster's New Collegiate Dict. (7th ed. 1970) p. 619), obviously modifies injury or sickness, *not loss*. The majority does not contend the exclusionary clause is ambiguous.

The clear provisions of the *exclusionary* clause control despite any ambiguity in the *insuring* clause. " 'Each clause is to be considered with reference to every other clause upon which it has any bearing, and all the clauses and provisions are to construed together as the unified medium whereby the intent of the parties to the instrument is to be reached.' " (*Burr* v. *Western States Life Ins. Co.* (1931) 211 Cal. 568, 575 [296 P. 273].)

The exclusion removes from coverage events which would otherwise fall within the scope of the insured event (2 Richards on Insurance (1952) § 208, pp. 713-714.) Since the exclusionary clause ordinarily limits the coverage provided by the insuring clause, it must be read with a view toward ascertaining the extent to which such coverage is restricted. Accordingly, if there were a conflict between the insuring clause and the exclusionary clause, the insured must reasonably expect the unambiguous exclusion would control.

Obviously, if the exclusionary clause controls in cases of direct conflict, it must control in cases where there is no direct conflict. When the only possible conflict arises because of ambiguity in the insuring clause,[2] the unambiguous exclusionary clause must be given full effect. Under the rule requiring the provisions of the policy to be construed together, the exclusionary clause must, at least, be viewed as a more explicit statement or a clarification of the insuring clause.

Whether the insuring clause conflicts or is merely ambiguous, there is no doubt as to the meaning of the policy, making the rule of liberal construction in favor of the insured inapplicable. Also, there is no unfairness since the insured must reasonably expect that the unambiguous

---

*Welborn* (1959) 357 Mich. 625 [99 N.W.2d 553]; *Bonney* v. *Citizens' Mut. Auto. Ins. Co.* (1952) 333 Mich. 435 [53 N.W.2d 321].) Those cases which have ruled the exclusionary clause does not exclude liability for medical expenses in excess of workmen's compensation benefits contained clauses whose language was specific as to such liability and are clearly distinguishable from our present case. (See *Burkett* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 360 [76 Cal.Rptr. 476]; *Hunt* v. *Hospital Service Plan of N. J.* (1960) 33 N.J. 98 [162 A.2d 561, 81 A.L.R.2d 919].)

[2]The insuring clause, providing for payment for loss "except losses covered by . . . Workmen's Compensation," is ambiguous in that it is unclear as to whether all coverage—or only part of it—is precluded by the availability of compensation benefits.

exclusionary clause will be given its ordinary effect of restricting the coverage of the insuring clause.[3]

In the instant case it is clear that the exclusionary clause prevents coverage for the injury since the employer-employee relationship existed as a matter of law, making workmen's compensation benefits available. The test for existence of the employment relationship is not the *form* of consideration the employee receives, which need not be pecuniary (*Anaheim General Hospital* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.App. 3d 468, 473 [83 Cal.Rptr. 495]), but rather, the relationship is determined by the degree of control exercised by the employer over the employee. (*Department of Natural Resources* v. *Ind. Acc. Com.*, 216 Cal. 434, 438 [14 P.2d 746].) Here control is evidenced in the duties plaintiff was to perform in order to receive consideration in the form of reduced rent. Therefore, since the requisite relationship existed, making benefits available, the exclusionary clause eliminates coverage for the injury, irrespective of the amount of such benefits or their collection.

As pointed out above, the exclusionary clause eliminates coverage whether or not compensation is in fact paid and whether or not it covers all expenses. The lack of coverage was established at the time of injury and did not depend on future events. There being no coverage, breach of the implied covenant of good faith and fair dealing (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]) may not be predicated on withholding of payments to which the insured was not entitled and could not become entitled.

It must be concluded that plaintiff was not entitled to any damages.

The order granting new trial should be affirmed and the judgment reversed.

On June 7, 1974, the opinion was modified to read as printed above.

---

[3]Aside from claiming the policy is ambiguous, the majority also relies on a statement in the application: "ALL BENEFITS PAYABLE IN FULL REGARDLESS OF ANY OTHER INSURANCE YOU MAY HAVE." The statement has no application to this case. The workingman does not have compensation insurance; his employer carries it.