[Civ. No. 48292. Second Dist., Div. Two. Dec. 2, 1976.]

RONALD MASON, Plaintiff and Appellant, v.
MERCURY CASUALTY COMPANY et al.,
Defendants and Respondents.

COUNSEL

West & Girardi, John Karns and John A. Girardi for Plaintiff and Appellant.

Finn, Safran & Silva and John E. Finn for Defendants and Respondents.

OPINION

**ROTH, P. J.**—Appellant's car was burglarized sometime between 10 p.m. on December 31, 1971, and 6 a.m. of the following day. Appellant sued respondent Mercury Casualty Company (Mercury), appellant's insurer, and in his first cause of action prayed for compensatory damages in the amount of $1,000, respondent having denied liability on the

ground that appellant's policy had lapsed. In the second cause of action of his complaint appellant asked for punitive damages in the amount of $25,000 on the ground that Mercury had wilfully and wantonly breached its fiduciary relationship with appellant by refusing payment on the first cause of action for the reason indicated.

The essential facts are undisputed. The insurance policy purchased by appellant from Mercury was in effect for the period "from 12-31-70 to 12-31-71." On or about December 2, 1971, a renewal notice[1] transmitted by Mercury was received by appellant; the notice stated that a "renewal request" from appellant had to be received by Mercury before the policy could be renewed. On December 31, 1971, but after 12:01 a.m. of December 30, 1971, appellant's mother posted a check with the renewal request above referred to. They were not received by respondent McCallum, Mercury's agent, until January 3, 1972. On the same day, but after receipt of the renewal notice and check, appellant reported his loss (which, as noted, occurred on the night of December 31/January 1) to McCallum by telephone. On January 17, 1972, appellant was notified that his claim had been denied by Mercury because the policy period ran to, but not through, December 31, 1971.

The jury found for appellant and awarded actual damages of $950 and punitive damages of $25,000. Thereafter, the trial court granted a motion for a judgment notwithstanding the verdict on the second cause of action under which punitive damages were awarded and in addition granted a motion for a new trial predicated on the same count. The latter order was to take effect only in the event that order granting the judgment notwithstanding the verdict would be reversed on appeal.[2]

■ Appellant predicates his second cause of action on the single allegation that respondent's denial of his claim was "wilful" and "wanton." Accepting that allegation as adequate to meet the require-

---

[1]The renewal notice is reproduced in its entirety in the appendix to this opinion. The legend "TO COMPLY WITH NEW REGULATIONS YOUR RENEWAL REQUEST MUST BE RECEIVED IN ORDER FOR US TO RENEW YOUR POLICY" is in red.

[2]The judgment on the second count which rested on the jury's verdict, entered on June 19, 1975, was vacated by the court on August 8, 1975, when it granted the motion for a judgment N.O.V. The notice of appeal filed on September 8, 1975, is purportedly from "the judgment notwithstanding the verdict and in the alternative new trial as ordered ... on August 8, 1975." We augmented the record on our own motion and find that no judgment was entered in this case until November 12, 1975. An order granting judgment notwithstanding the verdict is not a final judgment and is not an appealable order. (*Herman* v. *Shandor* (1970) 8 Cal.App.3d 476, 479 [87 Cal.Rptr. 443].) However, pursuant to California Rules of Court, rule 122(c), we consider the notice of appeal to have been filed immediately after the entry of judgment and accept it as such.

ment of allegation of oppression, fraud or malice required by Civil Code section 3294 and case law upon which appellant may rest his claim to recover punitive damages, it is clear from the record that there is a complete absence of any evidence which shows any wilful or wanton or oppressive or fraudulent or malicious misconduct on the part of respondent.

*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 460 [113 Cal.Rptr. 711, 521 P.2d 1103] (following the doctrine of *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-660 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429-433 [58 Cal.Rptr. 13, 426 P.2d 173] and their progeny) reiterates that bad faith violation of the terms of an insurance contract "sounds in tort" and that "an insured may recover for *all detriment* resulting from such violation, including mental distress." (Italics added.) When an insurer *unreasonably* and in *bad faith* withholds payment of the claim of the insured, the insured may treat the misconduct in question as a tort, and sue in tort, for compensatory damages not embraced in an action for breach of contract. (*Silberg* v. *California Life Ins. Co., supra,* at p. 461 [citing authorities].)

It is trite to say, however, that every proved tort does not per se entitle the wronged person to punitive damages. *Silberg,* citing authorities, reiterates the settled law on this subject: "It does not follow that because plaintiff is entitled to compensatory damages that he is also entitled to exemplary damages. In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice. [Citation.] He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights. [Citations.] While we have concluded that defendant violated its duty of good faith and fair dealing, this alone does not necessarily establish that defendant acted with the requisite intent to injure plaintiff."

Admittedly, the second cause of action sounds in tort. Appellant was required to prove that Mercury harbored, and acted, *with intent* to vex, injure or annoy him or, in the alternative, that Mercury acted with a conscious disregard of his rights. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Roth* v. *Shell Oil Co.* (1960) 185 Cal.App.2d 676, 682 [8 Cal.Rptr. 514].)

Applying the familiar test to a judgment granted notwithstanding the verdict, i.e., viewing the evidence in the light most favorable to appellant, we find no evidence of wilful, wanton, oppressive, fraudulent or malicious conduct to support a verdict awarding punitive damages.

(*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377].)

Appellant contends that oppression or wanton disregard of its rights was shown when Mercury chose to interpret the terms of the policy, i.e., its expiration date, in an unfavorable manner to appellant. It is true that when an insurance policy is reasonably susceptible of two interpretations, it should be construed in favor of the insured. However, the crux of the matter is that a finding of malice cannot be predicated on the mere fact of a divergent interpretation of an insurance contract as long as the insurer's interpretation was rendered in good faith. (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, 462-463.) At bench, there was testimony that it was, in fact, custom and practice in the industry that a policy expired a minute after midnight on the anniversary date of the policy. However, even without such testimony, appellant failed to meet his burden of proof re malice in that he did not adduce any evidence to show that the interpretation of the contract as to its expiration time was unreasonable. Every decision of an insurer adverse to the insured is not evidence, and certainly not conclusive evidence, of bad faith on the part of the insurer.

Although the jury by its verdict chose to ignore the terms of the policy and the reminder in the renewal notice and to disagree with Mercury's claim that it was in accordance with the practice of the insurance industry at the time in question that the policy ran "to" rather than "up to and including December 31," there simply is no evidence that Mercury's interpretation of the contract irrespective of the renewal notice was unreasonable or undertaken in bad faith. Such evidence is the necessary predicate to an award of punitive damages. (See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032] [duty not to withhold *unreasonably* payments under the policy]; *Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, 463.)

Appellant also contends that Mercury's bad faith is shown by its disregard of the rule that the "acceptance" of Mercury's "offer" to renew the premium, i.e., the mailing of the renewal request together with the renewal premium, brought a contract of insurance into existence upon the mailing of the "acceptance" on December 31, 1971. (Civ. Code, § 1583.) The difficulty with this theory is that appellant had been put on notice by Mercury on or about December 2 that the renewal request would have to have been received before the policy could be renewed. We note that a full 28 days elapsed before appellant chose to heed this notice. (Civ. Code, § 1582.)

Although it is unnecessary to consider appellant's contentions regarding the order granting a new trial, we note with approval the trial court's careful review of the evidence and specification of reasons in support of its order.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1977.

---

### APPENDIX

## JOHN McCALLUM, INSURANCE

JOHN B. GLICK & CO.   •   WAADE REALTY INSURANCE DEPT.   •   H. M. TAYLOR AGENCY

721 SOUTH GARFIELD AVENUE   •   ALHAMBRA, CALIFORNIA 91802   •   281-5965   •   283-1097   •   442-7651

## RENEWAL REQUEST
12/2/71

Ronald Mason
17131 Weddington St.,
Encino, California 91316

Expiration date _____ 12/31/71 _____

Policy Number __ A 156581 _____

**Dear Customer:**

As you know, the insurance on your ____ 1968 Triumph Conv. _____ is expiring as indicated above. We will be pleased to renew your insurance for the 3-year / annual premium of _____ $506.00 ____ .

We can handle the premium in any one of the following ways:

1 You may send the full premium on or before the effective date.

2 If you wish, you may send ½ of the premium on or before the effective date, and the balance in 30 days. In this case you may pay _____ on _____ and _____ on _____ .

3 We have a Finance Plan Available. You may pay a down payment of _____ and _____ monthly payments of _____ . The down payment must reach us before the effective date, and the payments start 30 days later. The total includes a finance charge. You will receive a copy of the finance agreement.

Please indicate below how you would like us to arrange the payment of your premium; sign the form and return it to us in the enclosed envelope. Your prompt attention and reply will enable us to handle your renewal with the best service to you. In the event this is a fire insurance renewal with a mortgagee we must send the mortgagee a policy 30 days in advance of the expiration. Requests received too late to comply with your mortgagee's requirements will bear a $5.00 Mortgagee's fee.

If you have any changes or additions, please note them on the reverse side of this form. Please feel free to call our office if there is any question regarding your insurance.

Please renew my insurance.

☐ 1. Payment in full is enclosed.

☐ 2. I would like to pay per #2 above, check for _____ is enclosed.

☐ 3. Please set my premium up on monthly payments, down payment is enclosed.

> TO COMPLY WITH NEW REGULATIONS YOUR RENEWAL REQUEST MUST BE RECEIVED IN ORDER FOR US TO RENEW YOUR POLICY.

X_____
Signed