[No. 36978. En Banc. January 21, 1965.]

GARY E. CARROLL, *Respondent*, v. THE UNION LABOR LIFE INSURANCE COMPANY, *Appellant.*\*

*Hamblen, Gilbert & Brooke* and *Philip S. Brooke,* for appellant.

*Keith, Winston & Repsold,* by *Leo J. Driscoll,* for respondent.

FINLEY, J.—In this lawsuit Gary E. Carroll (respondent-plaintiff) is suing the appellant insurance company to re-

\*Reported in 398 P. (2d) 164.

cover the cost of hospitalization, medical and surgical services necessitated by injuries sustained in the course of gainful work. The claim arises and, allegedly, is payable by reason of group insurance policies issued by appellant-defendant insurance company for the benefit of the employees of Local Union No. 83 of the International Union of Operating Engineers in Spokane, Washington.

The facts are not in dispute. Respondent had been employed regularly for more than 9 years by Spokane School District No. 81 as a custodial engineer. By virtue of this *employment* and *membership* in *Local 83,* he was insured under the group insurance policies of appellant and was given a certificate to that effect.

Respondent testified that he worked at his school occupation from 5:30 a.m. to 2 p.m., 5 days a week. To supplement his income from this employment, in 1959, he became associated with another man in the business of cement finishing as a self-employed independent contractor.

On November 29, 1961, respondent, while doing cement finishing work, was injured seriously when a cement delivery truck backed over him. He was hospitalized, and received medical and surgical care. It is agreed that the cost was $2,602.71. When respondent claimed this amount under the group insurance policy, appellant refused to pay.

Respondent sued, and the trial court granted judgment for the stipulated amount. This appeal followed.

The two policies of group insurance and the certificate given to respondent provide the following coverage and limitations:

"PERSONS TO BE INSURED
"1. All active full-time employees [respondent] of Participating Employers [the school district].
" . . .
"HOSPITAL EXPENSE AND DEPENDENTS HOSPITAL EXPENSE PROVISIONS (Non-Occupational)
"Hospital Expense Benefits. Upon receipt of due proof that any Person or Dependent of such Person while insured under this provision, shall become confined to a duly constituted and lawfully operated hospital because of non-occupational bodily injury . . . or occupational disease,

as defined in Limitations, the Company will pay such Person, subject to the limitations and provisions of the Policy, the following benefits:

"  .  .  .

"Limitations. No payment shall be made under the paragraph entitled Hospital Expense Benefits:

"  .  .  .

"C. for hospital confinement  .  .  .

"(a) due to sickness resulting from occupational disease; for the purposes of the Policy the term 'occupational disease' shall mean a disease for which the Person or Dependent with regard to whom a claim is submitted, is entitled to benefits under the applicable Workmen's Compensation Law  .  .  .  or similar legislation, or

"(b) due to accidental bodily injuries arising out of and in the course of such Person's or Dependent's employment."

The same definitions of coverage and the same limitations are set forth in the sections pertaining to surgical expense benefits, medical expense benefits and laboratory and x-ray examination benefits.

It is admitted that respondent's employment as a custodial engineer is extrahazardous and, thus, is covered by the state Workmen's Compensation Act. The policies do not cover any injury or disability arising from that particular employment.

It is apparent that respondent, when engaged as an independent contractor in extrahazardous employment as a cement-finishing workman, had available to him the protection of industrial insurance and failed to make use of it.

The appellant's contention is that the parties intended that the insurance policies would cover only employment or occupations not covered by workmen's compensation. It is urged that employment as a cement finisher, like that of a custodial engineer, is embraced within the insurance benefit provisions of the Workmen's Compensation Act, and, consequently, cement finishing is not covered by the appellant's group insurance policy.

Respondent, contrariwise, contends that his occupation or employment, basically, was that of a school custodial engineer; that cement finishing, although gainful work and

could be described as occupational, was not the latter under the language and the intent of appellant's policy of insurance. Respondent further contends that if the policy does not unambiguously exclude coverage respecting his cement-finishing activity then the doubt must be resolved in his favor, relying upon *Lawrence v. Northwest Cas. Co.*, 50 Wn. (2d) 282, 311 P. (2d) 670; *Christensen v. Sterling Ins. Co.*, 46 Wn. (2d) 713, 284 P. (2d) 287.

In its finding of fact No. 8, the trial court stated:

" . . . the group policies and group certificate were written and placed into effect with the intent that no coverage would be provided for injuries arising out of and in the course of that employment which permitted the policy in the first place (i.e., the Union membership group type employment, being in this case plaintiff's employment as an engineer with School District #81), it being the purpose not to duplicate workmen's compensation coverage in such instances, but said policies and certificates did intend and provide coverage for injuries arising out of other gainful activities and occupations, even though remunerative in nature, and the same were not effectively or unambiguously excluded by the limitations and exclusionary language used and adopted by defendant insurer."

While this statement by the trial court does not seem to us to constitute a finding of fact, it is indicative of the reasoning and the conclusions reached by the trial judge in resolving the problem in this lawsuit. We are inclined to agree with the reasoning and the conclusions indicated.

As we see the matter, Gary Carroll, the plaintiff-respondent, was covered by the policy of medical insurance, and entitled to benefits under it *unless* his medical expenses are, in the language of the policy,

"(a) due to sickness resulting from occupational disease; for the purposes of the Policy the term 'occupational disease' shall mean a disease for which the Person . . . *is entitled to benefits* under the applicable Workmen's Compensation Law . . . or

"(b) due to accidental bodily injuries arising out of and in the course of such Person's or Dependent's employment." (Italics ours.)

The issue is therefore clear-cut. Does this language, the only relevant limitation in the policy, unambiguously exclude coverage for the plaintiff while he is engaged in "moonlighting"—i.e., doing a second job after regular working hours to supplement income?[1]

■ There seems to be little disagreement concerning the basic meaning and purpose of the language in the above-quoted limitation clause of the insurance contract. The intention was to provide coverage where there was none under the Industrial Insurance Act, thereby, among other things, possibly avoiding costly and wasteful duplication or overlapping insurance coverage. To accomplish this the policy utilized the term, *"entitled to benefits,"* meaning that in those instances where the injured party was "entitled to benefits" under the act no payment would be forthcoming under the policy.

The appellant stresses the fact that cement finishing is "extrahazardous" and, therefore, eligible or qualified for voluntary coverage under the act. Furthermore, it is pointed out that respondent *could have been* entitled to benefits *if* he had simply applied for coverage. The appellant regards the fact that respondent did not so apply as his own fault.

The respondent-plaintiff *clearly* is not entitled to any benefits under the Industrial Insurance Act, because he never applied under the voluntary coverage provisions. No money is forthcoming to pay the medical and hospital bills. Thus, perhaps the issue can be said to concern the reasonable meaning of the phrase, *"is entitled to benefits."* Does it mean *actually* entitled to benefits or *could qualify* for benefits by signing up and paying premiums as a self-employer under the act? Since no industrial insurance can be paid to Mr. Carroll, the refusal of the insurance company to pay does not avoid *duplication* or *overlapping cov-*

---

[1]For the 3 years shown in the record, the after-hour cement finishing done by Carroll constituted an average of 17 per cent of his total personal income, before taxes. His realization from "moonlighting" was highest in 1961, the year of the accident, reaching 22 per cent of his personal income.

*erage.* It avoids the very purpose of the policy of insurance —*i.e.,* that the medical and related expenses be paid for an injury sustained by the janitor when he was away from the school and was not engaged in work for the school.

■ Given the facts and circumstances of the present case, we are persuaded to the views of respondent, and we have concluded that the insurance company contracted to cover the expenses embraced in respondent's claim. However, if there may be some doubt about this, we point out that the word *employment* and the words *entitled to benefits* are at least ambiguous; and being ambiguous as to the extent of intended coverage, the construction of the policy and the disposition of the case are controlled by the oft-cited rule that ambiguous insurance contracts must be construed in favor of the insured. *Washington Restaurant Corp. v. General Ins. Co. of America,* 64 Wn. (2d) 150, 390 P. (2d) 970 (1964).

The judgment should be affirmed. It is so ordered.

ALL CONCUR.