**TIPPECANOE VALLEY SCHOOL CORPORATION and Employee Plans, Inc., Appellants–Defendants,**

v.

**Wayne L. LANDIS, Appellee–Plaintiff.**

No. 43A03–9705–CV–151.

Court of Appeals of Indiana.

Aug. 26, 1998.

Charles R. Rubright, George T. Patton, Jr., J. Christopher Janak, Bose McKinney & Evans, Indianapolis, for Appellant–Defendant Tippecanoe Valley School Corporation.

Mark W. Baeverstad, W. Douglas Lemon, Hunt Suedhoff, L.L.P., Fort Wayne, for Appellant–Defendant Employee Plans, Inc.

Richard J. Darko, Heather Lee Banner, Lowe Gray Steele & Darko, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellants-defendants Tippecanoe Valley School Corporation (Tippecanoe) and Employee Plans, Inc. (Employee Plans) appeal the trial court's denial of their joint motion for summary judgment, claiming that it was error to permit appellee-plaintiff, Wayne L. Landis to recover certain medical expenses under the provisions of an employee benefit insurance policy.

### FACTS [1]

Landis was a full-time school teacher employed by Tippecanoe. During summer breaks, Landis operated a two-man construction company with his friend, Scott Simpson. In the spring of 1994, Landis was awarded the bid to complete a roofing job on a nearby church.

On June 17, 1994, Landis arrived at the church to work on the roof. As Landis stood on some scaffolding, it suddenly collapsed and Landis fell approximately twenty feet to the ground. As a result of the accident, Landis suffered a broken spine and became paralyzed at the waist. At the time of the

---

1. Oral argument was heard in this cause on June 30, 1998, in Indianapolis.

fall, Landis had insurance coverage under Tippecanoe's employee benefit plan, which was administered by Employee Plans. The policy excluded payments for injuries that were incurred while the insured worked at any occupation for wage or profit.

As a result of the injuries that Landis sustained, he incurred medical expenses in excess of $125,000. Landis submitted his claims for medical expenses to Employee Plans for payment. However, Employee Plans denied those claims after determining that Landis' injuries were work-related and were, therefore, excluded under the insurance policy. As a result of Employee Plans' refusal to pay the medical claims, Landis filed a complaint against Tippecanoe and Employee Plans on June 28, 1995 alleging, *inter alia*, that both parties had breached the insurance contract in refusing and failing to pay his medical expenses. Thereafter, Tippecanoe and Employee Plans filed a counterclaim against Landis in which they sought a declaratory judgment that Landis was precluded from recovering under the insurance contract because the policy provided that claims which arose out of or in the course of, any occupation for wage or profit were excluded from coverage. R. at 73. Tippecanoe and Employee Plans then filed a joint motion for summary judgment on July 1, 1996, arguing that they were entitled to judgment as a matter of law because the provisions of the insurance contract barred Landis' claims. Following a hearing on the motion, the trial court denied the joint motion for summary judgment on August 21, 1996, and concluded that Landis "was a covered person and entitled to benefits under [Tippecanoe's] insurance plan." R. at 292–94.

On January 21, 1997, a jury trial commenced on Landis' claims against Employee Plans and Tippecanoe. Prior to submission of the case to the jury, Landis and Tippecanoe entered into a settlement agreement which provided that Tippecanoe would pay Landis' medical expenses. Thereafter, the trial court entered an order granting Landis' motion to dismiss Tippecanoe from the action but expressly reserved the right of both parties to appeal the denial of summary judgment. The trial then proceeded on Landis' claim that Employee Plans had administered the policy in bad faith. Following the presentation of evidence, the jury entered a verdict against Employee Plans in the amount of $200,000. Employee Plans and Tippecanoe now appeal the trial court's denial of their joint motion for summary judgment.[2]

### DISCUSSION AND DECISION

#### I. Standard Of Review

■ When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind.Ct.App. 1996), *trans. denied.* We resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995), *trans. denied.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind. Ct.App.1997), *trans. denied.* We will reverse the trial court if it is determined that it misapplied the law. *Hemingway v. Sandoe*, 676 N.E.2d 368, 369 (Ind.Ct.App.1997). The party appealing a denial of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

■ The construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Robinson v. Century Personnel, Inc.*, 678 N.E.2d

2. Employee Plans also challenges the trial court's determination that it could be liable for handling Landis' insurance claims in bad faith along with alleged errors that occurred at trial. However, because our resolution of the issue regarding the trial court's denial of summary judgment is dispositive, we need not address those issues.

1268, 1270 (Ind.Ct.App.1997), *trans. denied.* Additionally, a court may not rewrite an insurance contract. *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind.Ct.App. 1980). If an insurance contract is clear and unambiguous, the language must be given its plain meaning. *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind.1985).

### II. The Insurance Contract

Tippecanoe and Employee Plans contend that the trial court erred in denying their motion for summary judgment because the plain language of Tippecanoe's employee benefit plan contract barred Landis' claims for medical payments for the injuries he sustained in the fall. In order to resolve this issue, we begin with an examination of the relevant provisions of the insurance contract. At the time of Landis' fall, Tippecanoe's employee benefit plan provided as follows:

### GENERAL PLAN EXCLUSIONS AND LIMITATIONS

The following exclusion and limitation apply to expenses incurred by all covered persons and will not be paid by the plan:

. . .

C. Charges arising out of, or in the course of, any occupation for wage or profit, or for which the covered Person is entitled to benefits under any Worker's Compensation or Occupational Disease Law, or any such similar law.

R. at 165.

In construing this language, Tippecanoe and Employee Plans maintain that the trial court improperly narrowed the definition of the term "occupation" as used in the contract to mean only the "continued or regular activity for the purpose of earning a livelihood." R. at 292. In support of their argument, Employee Plans and Tippecanoe point to this court's decision in *Alderfer v. State Farm Mut. Automobile Ins. Co.*, 670 N.E.2d 111 (Ind.Ct.App.1996), *trans. denied.*

In *Alderfer*, State Farm's insured, Lybarger, was operating a truck in his part-time employment as a volunteer fireman when he struck Alderfer, who was also a volunteer firefighter. *Id.* at 112. At the time of the accident, Lybarger was insured under an insurance policy issued by State Farm to his parents. *Id.* State Farm declined liability coverage to Lybarger in light of an exclusion in the policy for a non-owned vehicle used in "any other business or occupation." *Id.* Specifically, the policy provided that:

THERE IS NO COVERAGE FOR NON-OWNED CARS:

. . . .

2. WHILE:

a. BEING REPAIRED, SERVICED OR USED BY ANY PERSON WHILE THAT PERSON IS WORKING IN ANY CAR BUSINESS; OR

b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a private passenger car driven or occupied by the first person named in the declarations, his or her spouse or their relatives.

*Id.*

Following the accident, State Farm filed a complaint for declaratory judgment contending that there was no coverage for the fire truck operated by Lybarger in light of the policy exclusion. *Id.* The trial court granted State Farm's motion for summary judgment concluding that the "use of the word 'any' in the exclusion 'is all inclusive and therefore includes the occupation of firefighter whether or not that occupation is the activity in which one is primarily engaged.'" *Id.* at 112.

On appeal, this court affirmed the grant of summary judgment in favor of State Farm and found the language of the insurance policy clear and unambiguous. *Id.* In rejecting Lybarger's argument that the exclusion did not apply because his service as a volunteer firefighter was not his "principal" or "primary" occupation, this court observed that:

There is no coverage for non-owned cars ... while ... used in any other business or occupation. In particular, we note the use of the word 'any' in the policy. This language requires a more inclusive reading of the exclusion. Although Lybarger's position as a volunteer firefighter was not his principal employment, it nevertheless constituted a substantial commitment ... It

is not uncommon to be involved in a business aside from one's primary occupation, and, certainly, being a volunteer firefighter is more than a hobby or a recreational activity. Being a volunteer firefighter clearly qualifies as 'any other business or occupation.'

*Id.*

▮ Following the rationale of *Alderfer*, we find that Landis' claim for coverage is encompassed within the Tippecanoe plan's exclusion. Although Landis was principally employed as a school teacher, the uncontroverted evidence demonstrated that he was engaged in a second, summertime occupation for wage or profit as a roofing contractor. R. at 186–90. Additionally, while the terms of the insurance policy in *Alderfer* excluded coverage for non-owned automobiles used in any "other" business or occupation, such language is not crucial to our disposition of this appeal. Like *Alderfer*, Landis' employment as a contractor qualifies as "any occupation" for wage or profit under Tippecanoe's employee benefits contract. Because Landis' injuries occurred in the course of his occupation as a contractor, he was not entitled to recover his medical expenses under Tippecanoe's employee benefit plan. Thus, his claim is within the plan's exclusion, and the trial court erred in construing the contract to include a definition of "any occupation" that contradicts our decision in *Alderfer*. As a result, while this court is sympathetic to Landis' plight, we are compelled to reverse the trial court's denial of Tippecanoe and Employee Plans' motion for summary judgment.

Reversed and remanded with instructions that the trial court enter final judgment in favor of Tippecanoe and Employee Plans.

SULLIVAN, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, *dissenting.*

I respectfully dissent.

The majority concludes as a matter of law that the phrase "any occupation for wage or profit" contained in the exclusion section of the Tippecanoe Valley School Corporation employee benefit plan excludes health insurance coverage for medical expenses incurred by Landis who was injured while performing casual labor during his summer recess from teaching.

As construed by the majority, the phrase "any occupation for wage or profit" would bar coverage for any insured teacher or covered family member injured while performing any activity for profit. It would bar coverage for a teacher injured while farming a small plot of land during the summer time, and it would bar recovery for the children of an employee injured while babysitting for a neighbor, mowing grass, delivering newspapers or selling lemonade at a stand on the sidewalk. I believe such a construction is neither good law, nor good policy.

The purpose of the exclusion here at issue was to prevent double recovery for covered individuals injured while in the course of employment for which they could receive benefits under the Worker's Compensation laws, not to deny health benefits to a covered employee or family member who, like Wayne Landis, will otherwise be uninsured.

Historically, the Tippecanoe Valley employee benefit plan was construed to provide coverage to insureds like Landis who perform casual labor. The designated materials before the trial court on summary judgment show that the plan extended benefits to children of insureds while the children were babysitting, and that teachers were assured that their health coverage extended to farming and other similar activities. When Tippecanoe switched to Employee Plans as plan administrator, Tippecanoe's superintendent specifically assured the teachers that benefits had not changed. It was only when the plan changed reinsurers after Landis' accident, that the reinsurer began construing the exclusion as the majority now construes it and notified teachers that it now considered children injured while babysitting not covered under the plan.

This court's decision in *Alderfer v. State Farm Mut. Auto. Ins. Co.*, 670 N.E.2d 111 (Ind.Ct.App.1996), *trans. denied,* upon which the majority relies, is distinguishable from the present case. *Alderfer* involved an automobile insurance policy, not a health insurance policy; there are significant differences

between the two. To the extent *Alderfer* cannot be distinguished, it should be reconsidered.

When an ambiguity exists in an insurance policy, the policy is generally construed in favor of the insured. *Barga v. Indiana Farmers Mut. Ins. Group,* 687 N.E.2d 575, 578 (Ind.Ct.App.1997), *trans. denied.* It is this rule upon which the trial court's ruling that the exclusion did not bar Landis' health insurance benefits for an injury occurring while performing casual labor was based, and it is this rule which should guide our decision on appeal.

By excluding coverage to Landis, the majority makes the plan's benefits illusory. A person who engages in casual employment for which worker's compensation benefits are not required, *see* IC 22–3–2–9; IC 22–3–6–1, must either procure another health insurance policy or accept the risk of no coverage. Requiring the insured individual to procure other health coverage renders the benefits of the benefit plan at issue illusory.