**Mikel A. SCHILLING, Appellant– Plaintiff,**

v.

**HUNTINGTON COUNTY COMMUNITY SCHOOL CORPORATION; Huntington County Community School Corporation Employee Benefit Trust; and American Health Care Partnership, Inc., Appellees–Defendants.**

No. 35A02–0803–CV–191.

Court of Appeals of Indiana.

Dec. 18, 2008.

Aaron J. Butler, Haller & Colvin, P.C., Fort Wayne, IN, Attorney for Appellant.

Bryan H. Babb, Marisol Sanchez, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mikel A. Schilling appeals the trial court's grant of summary judgment to the Huntington County Community School Corporation ("Huntington"), the Huntington County Community School Corporation Employee Benefit Trust, and American Health Care Partnership, Inc. ("AHCP") (collectively, "the School"). Schilling raises two issues for our review, which we restate as whether the trial court properly determined that the School's Employee Health Plan ("the Health Plan") is unambiguous and operates to exclude Schilling from recovering for injuries sustained in a farm-related accident.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2000, Schilling began working for Huntington as a bus driver. Schilling worked about 180 days per year, from mid-August through the end of May. As an employee of Huntington, Schilling was eligible for, and participated in, the School's Health Plan. And for most of his adult life, Schilling also had worked as a self-employed farmer. During the period of the year in which Schilling was not driving a bus for the School, Schilling devoted about two-thirds of his time to farming.

On June 21, 2005, during his time off from bus driving, Schilling was involved in a vehicular accident while hauling grain to market. Schilling was selling the grain as part of his independent farm operation. As a result of the accident, Schilling suffered injuries requiring medical treatment, for which he incurred associated costs.

Schilling communicated with AHCP, the "Third party Administrator hired by [Huntington] to administer benefits on behalf of their [sic] employees," and WEB–TPA Employer Services ("WEB–TPA") about the June 21, 2005, accident. Appellant's App. at 202. On August 31, 2005, Schilling filled out and signed a multiple-page form for WEB–TPA, which was submitted with a copy of the Indiana State Police Crash Report. The form and report confirmed that the accident resulted from a failure of the brakes on Schilling's vehicle. And on October 28, 2005, Schilling mailed a letter to AHCP. In that letter, Schilling stated that he "was hauling my grain during my off time while I had time to do so." *Id.* at 172.

In early November of 2005, Schilling completed another form for AHCP. In that form, Schilling stated that the June 2005 accident occurred while he was "hauling the grain as a commodity to market for profit" so that he could "make [his][f]arm [p]ayment [and] [e]xpenses." *Id.* at 173. Later, Schilling clarified that he was hauling his "own grain," and that he "wasn't for hire." *Id.* at 99.

On November 28, 2005, AHCP informed Schilling that it would not cover the medical costs associated with his June 2005 accident. Specifically, AHCP stated that, "[b]ased on the information we have received, the expenses incurred as the result of your 6/21/05 motor vehicle accident are not covered under the plan." *Id.* at 202. AHCP reached its decision based on the language of paragraph 33 of the Health Plan's "General Plan Exclusions" ("Exclusion 33"). *Id.* Exclusion 33 states the following is not covered by the Health Plan:

> (33) **Occupational.** Injury or Sickness resulting from any occupational or employment cause whether or not Worker's Compensation coverage has been purchased to cover these expenses. The standard for this exclusion shall be: if worker's compensation insurance would have covered these expenses, no coverage shall be provided under this plan.

*Id.* Schilling did not purchase worker's compensation coverage for his farming operation in 2005.

On December 7, 2005, Schilling appealed AHCP's decision, but his appeal was denied. Schilling again appealed, and again AHCP denied his claim. On December 21, 2006, Schilling filed a request for declaratory judgment against the School. On September 28, 2007, the School filed its motion for summary judgment. On October 1, 2007, Schilling likewise moved for summary judgment. The court held a hearing on those motions on November 19, 2007, and on January 30, 2008, the court entered its order granting the School's motion for summary judgment. This appeal ensued.

## DISCUSSION AND DECISION

Our standard of review for summary judgment appeals is well established. *Asbestos Corp. v. Akaiwa,* 872 N.E.2d 1095, 1096 (Ind.Ct.App.2007) (citing *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001)). An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.*

Summary judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Cobb,* 754 N.E.2d at 909). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.* The proper interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243–44 (Ind. 2000).

Contracts of insurance are governed by the same rules of construction as other contracts. *Id.* The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the contract. *See Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004), *trans. denied.*

To that end, "[w]e construe the insurance policy as a whole and consider all of the provisions of the contract[,] not just individual words, phrases, or paragraphs." *Id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* However, when an insurance contract is clear and unambiguous, the language must be given its plain meaning. *See, e.g., Tippecanoe Valley Sch. Corp. v. Landis,* 698 N.E.2d 1218, 1221 (Ind.Ct.App.1998), *trans. denied.*

As an initial matter, the parties dispute the application of *Landis* to Schilling's appeal. In that case, the insured, Landis, worked as a full-time school teacher for the Tippecanoe Valley School Corporation. *Id.* at 1219. During his summer breaks, Landis operated a two-man construction company. *Id.* In the summer of 1994, Landis fell off some scaffolding at one of his construction sites and was paralyzed. *Id.* Landis sought coverage for his medical expenses through his insurance policy with the Tippecanoe school corporation, but his insurer denied coverage. *Id.* at 1220. In relevant part, Landis' insurance policy excluded the following from coverage: "C. Charges arising out of, or in the course of, any occupation for wage or profit, or for which the covered Person is entitled to benefits under any Worker's Compensation or Occupational Disease Law, or any such similar law." *Id.* at 1221.

On appeal, we stated:

In construing this language, Tippecanoe and Employee Plans maintain that the trial court improperly narrowed the definition of the term "occupation" as used in the contract to mean only the "continued or regular activity for the purpose of earning a livelihood." In support of their argument, Employee Plans and Tippecanoe point to this court's decision in *Alderfer v. State Farm Mut. Automo-*

*bile Ins. Co.,* 670 N.E.2d 111 (Ind.Ct. App.1996), *trans. denied.*

In *Alderfer,* State Farm's insured, Lybarger, was operating a truck in his part-time employment as a volunteer fireman when he struck Alderfer, who was also a volunteer firefighter. *Id.* at 112. At the time of the accident, Lybarger was insured under an insurance policy issued by State Farm to his parents. *Id.* State Farm declined liability coverage to Lybarger in light of an exclusion in the policy for a non-owned vehicle used in "any other business or occupation." *Id.* . . . .

\* \* \*

On appeal, this court affirmed the grant of summary judgment in favor of State Farm and found the language of the insurance policy clear and unambiguous. *Id.* In rejecting Lybarger's argument that the exclusion did not apply because his service as a volunteer firefighter was not his "principal" or "primary" occupation, this court observed that:

> There is no coverage for non-owned cars . . . while . . . used in any other business or occupation. In particular, we note the use of the word 'any' in the policy. This language requires a more inclusive reading of the exclusion. Although Lybarger's position as a volunteer firefighter was not his principal employment, it nevertheless constituted a substantial commitment . . . It is not uncommon to be involved in a business aside from one's primary occupation, and, certainly, being a volunteer firefighter is more than a hobby or a recreational activity. Being a volunteer firefighter clearly qualifies as 'any other business or occupation.' *Id.*

Following the rationale of *Alderfer,* we find that Landis' claim for coverage is encompassed within the Tippecanoe plan's exclusion. Although Landis was principally employed as a school teacher, the uncontroverted evidence demonstrated that he was engaged in a second, summertime occupation for wage or profit as a roofing contractor.

*Id.* at 1221–22 (citations to the record omitted).

While there are factual similarities between Schilling's case and Landis', the ultimate question on the scope of their respective coverage is distinguishable. In *Landis,* the question before this court was whether a second, nonprincipal employment qualified as an "occupation," as that word was used in Landis' terms of exclusion. Here, however, Schilling argues that Exclusion 33 applies to him only if worker's compensation "would have covered" the medical expenses incurred as a result of the June 2005 accident. Appellant's Brief at 11. Schilling then states that Indiana's Worker's Compensation Act, Ind.Code §§ 22–3–2–2 to 6–3, did not apply to him in his role as a self-employed farmer "[u]nless [he] [took] several affirmative steps to bring the farming operation under the Worker's Compensation Act," Appellant's Brief at 13. Finally, because he did not take those steps, Schilling asserts that a genuine issue of material fact exists as to whether "worker's compensation insurance would not have covered" him. *Id.* at 14. Thus, the pertinent language of Exclusion 33 is not centered on whether Schilling's farm work was an "occupation," but instead on whether Schilling's activities associated with that work would have been covered by Indiana's Worker's Compensation Act. Hence, *Landis* is not controlling authority here.

▄▄ Nonetheless, Exclusion 33 is unambiguous. "Insurers are free to limit coverage; however, all exceptions, limita-

tions, and exclusions must be plainly expressed. An exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play." *Wells v. Auto Owners Ins. Co.*, 864 N.E.2d 356, 358 (Ind.Ct. App.2007) (citing *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind.Ct.App.2004)). Exclusion 33 states, in relevant part, that an "[i]njury ... resulting from any occupational or employment cause[,] whether or not Worker's Compensation coverage has been purchased[,]" is not covered by the Health Plan. Appellant's App. at 202. Exclusion 33 then states that "[t]he standard for this exclusion shall be: if worker's compensation insurance would have covered these expenses, no coverage shall be provided...." *Id.* That language clearly and unmistakably excludes from the Health Plan's coverage injuries that would be covered by Indiana's Worker's Compensation Act, regardless of whether worker's compensation was actually obtained by the insured.

▮ It is not disputed that Schilling could have obtained worker's compensation for his farming business. Schilling's injuries arose from his self-employment activities, and, as such, the decision of whether to purchase worker's compensation coverage for those activities was his alone. Indiana Code Section 22–3–2–9, while at first stating that the employers of "farm or agricultural employees" are ex-

empt from Indiana's worker's compensation laws, then states that such employers "may at any time waive such exemption ... by giving notice as provided...." Similarly, Indiana Code Section 22–3–6–1(b)(4) states:

An owner of a sole proprietorship may elect to include the owner as an employee ... if the owner is actually engaged in the proprietorship business. If the owner makes this election, the owner must serve upon the owner's insurance carrier and upon the board written notice of the election.

Again, it is not disputed that Schilling did not take the steps necessary to procure worker's compensation under either Indiana Code Section 22–3–2–9 or Indiana Code Section 22–3–6–1(b)(4). And Schilling concedes that, "if he had taken [those] affirmative steps to become covered by the Worker's Compensation Act," then "worker's compensation ... *would have covered* Mr. Schilling's expenses." [1] Appellant's Brief at 5 (emphasis in original).

Still, Schilling asserts that, to be effective, Exclusion 33 needed to "clearly and unmistakably" state the affirmative steps he was required to take in order to "purchase" worker's compensation coverage. *See Wells*, 864 N.E.2d at 358; Appellant's App. at 202. We cannot agree. Exclusion 33 plainly informed Schilling that the Health Plan would not cover injuries coverable by worker's compensation, regard-

---

1. In his Reply Brief, Schilling retracts that statement. Instead, he asserts that "[e]ven if Mr. Schilling had purchased worker's compensation coverage before his crash, his expenses would not have been covered by that insurance[ ] because his activities were outside the coverage of the Worker's Compensation Act." Reply at 12. We note that a party may not raise a new argument in a reply brief. *See, e.g., Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977–78 (Ind. 2005). That fact notwithstanding, the School correctly points out that "Schilling himself

admits that he was injured while hauling grain to market for profit, which he engaged in as part of his occupational task as a self-employed farmer." Appellees' Brief at 12–13 (citing Appellant's App. at 97–99). In light of that undisputed evidence, there is no genuine issue of material fact as to whether Schilling's farm-related activity was coverable by the Worker's Compensation Act. *See* I.C. § 22–3–2–2 (worker's compensation covers "personal injury or death by accident arising out of and in the course of the employment").

less of whether worker's compensation coverage "has been purchased." Appellant's App. at 202. To "purchase" something means "to get [it] into one's possession." Webster's 3d New Int'l Dictionary 1844 (2002). Hence, we must conclude that, if Schilling's farm-related activities would have been covered by the Worker's Compensation Act, even though procuring that coverage required multiple affirmative steps, he was required to take all the steps necessary to "purchase" that coverage if he wished to be insured. That he did not exercise his option to be covered does not affect the meaning of Exclusion 33.[2]

Finally, Schilling maintains that Exclusion 33 is contrary to public policy and therefore unenforceable. It is true, as Schilling suggests, that a broad range of activity might be excluded from coverage under Exclusion 33. But those possibilities do not render Exclusion 33, as applied to Schilling, contrary to public policy. Again, Schilling's injuries arose from his self-employment, and there is no dispute that he was responsible for and had the opportunity to purchase coverage for his self-employed activities under the Worker's Compensation Act. We note, however, that had Schilling's injuries arisen while he was employed by another individual or business, or had Schilling otherwise not had the personal opportunity to purchase worker's compensation coverage, we might well reach a different conclusion.

In sum, the trial court properly granted summary judgment to the School. Exclusion 33 is unambiguous and operates to exclude from the Health Plan's coverage all injuries that would be covered by Indiana's Worker's Compensation Act, regardless of whether worker's compensation was actually obtained by the insured. Further, Exclusion 33 is not contrary to public policy. Accordingly, we affirm the trial court.

Affirmed.

ROBB, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

The majority's interpretation of Exclusion 33 would require any School employee who might possibly be eligible for worker's compensation coverage, from whatever source, to buy it or risk losing insurance benefits provided by the Health Plan. The policy language before us cannot properly be read to have that effect, and I must therefore respectfully dissent.

The majority presumes Exclusion 33 refers to workers compensation that "has been purchased" *by the employee.* (*See, e.g.,* Op. at 8, at 390) (holding the policy language excludes injuries that would be covered by worker's compensation "regardless of whether workers compensation was actually obtained *by the insured.*") The policy does not specify the contemplated "purchaser" of the worker's compensation coverage, but it seems quite unlikely it would be a School *employee.*

Most School employees are probably not, like Schilling, self-employed in addition to their school employment. Surely a policy meant to cover a typical school system employee would not exclude coverage just because that typical employee had not bought his or her own worker's compensation coverage. I would therefore decline to read the exclusion to presume an em-

---

2. Insofar as Schilling contends that summary judgment for the School is inappropriate because worker's compensation will not cover his expenses since he did not actually take the affirmative steps necessary to procure that coverage, that argument is not well-taken. Again, Exclusion 33 applies "whether or not Worker's Compensation coverage has been purchased." Appellant's App. at 202.

ployee would lose his or her Health Plan coverage for any injury covered by worker's compensation that employee might have been able to purchase. The majority's premise that the School *employee* is obliged to "take the steps necessary to procure worker's compensation" (Op. at 9, at 390), would render the Health Plan coverage illusory for any employees covered by the Plan who might, under some scenario, be able to purchase worker's compensation coverage.

The majority's reading of Exclusion 33 is inconsistent with decisions that have addressed similar situations involving "moonlighting" employees who might have obtained worker's compensation coverage but did not do so. In *Carroll v. Union Labor Life Ins. Co.*, 65 Wash.2d 513, 398 P.2d 164 (1965), Carroll was a custodian for a school system. By virtue of his employment with the school system he was insured under a group plan issued for members of his union. To supplement his income from the school, Carroll worked as a self-employed cement finisher.

He was injured while doing cement finishing work and claimed benefits under the group insurance policy. The insurer refused to pay, relying on an exclusion for medical expenses "resulting from occupational disease." "Occupational disease" was defined as one for which the insured "is entitled to benefits under the applicable Workmen's Compensation Law." *Id.* at 165.

The court noted Carroll "had available to him the protection of [worker's compensation] and failed to make use of it." *Id.* There, as in the case before us, the insurer contended Carroll's self-employment was "embraced within the insurance benefit provisions of the Workmen's Compensation Act" and consequently not covered by it. *Id.* The insurer noted Carroll, like Schilling, "qualified for voluntary coverage

under the Act" and "could have been entitled to benefits if he had simply applied for coverage. [Insurer] regards the fact that [Carroll] did not so apply as his own fault." *Id.* at 166.

The court addressed

the reasonable meaning of the phrase, 'is entitled to benefits.' Does it mean actually entitled to benefits, or could qualify for benefits by signing up and paying premiums as a self-employer under the Act? Since no industrial insurance can be paid to Mr. Carroll, the refusal of the insurance company to pay does not avoid duplication or overlapping coverage. It avoids the very purpose of the policy of insurance—*i.e.*, that the medical and related expenses be paid for an injury sustained by the janitor when he was away from the school and was not engaged in work for the school.

Given the facts and circumstances of the present case, we are persuaded to the views of [Carroll], and we have concluded that the insurance company contracted to cover the expenses embraced in [Carroll's] claim. However, if there may be some doubt about this, we point out that the word Employment and the words Entitled to benefits are at least ambiguous; and being ambiguous as to the extent of intended coverage, the construction of the policy and the disposition of the case are controlled by the oft-cited rule that ambiguous insurance contracts must be construed in favor of the insured.

*Id.* at 166–67.

Similarly, in *Hunt v. Hospital Service Plan of N.J.*, 33 N.J. 98, 162 A.2d 561 (1960), the court addressed exclusions for medical and hospital services that are "compensable" under the worker's compensation law. *Id.* at 563. The court noted the policies "fairly breathe, as their basic motive in excluding such compensa-

ble services, a desire to avoid duplicate or double payment of the bills to the insured." *Id.* at 564.

The *Hunt* court recognized "two reasonably supportable views as to the significance of the word 'compensable' as it is used in its present context." *Id.* at 563. One was that it connoted "hospital and medical services of the type declared payable or 'compensable' as an incident of an injury of the type entitled to benefits under the Workmen's Compensation Act. *Id.* That position was advanced by the Insurer, who argued it was therefore "of no consequence that for some additional technical condition imposed by the Legislature" the particular services did not qualify for payment by the employer. *Id.*

Hunt's position was that to be "compensable" the services not only must be of the *type covered* by the compensation act but must in fact *qualify for and require payment* by the employer. *Id.* at 564–65. The court found the more reasonable choice of the alternative constructions of the policy language was that it excluded only those hospital and medical services that were "in fact compensable … *and actually are paid …*" *Id.* at 564 (emphasis supplied).

The *Hunt* court noted in worker's compensation cases the primary obligation to provide and to pay for medical and hospital treatment is on the employer, and the employee health insurance plans should not be called on to pay for the care "where liability of the employer in fact exists under the conditions laid down by the Legislature." *Id.* But just as the health insurance plans are entitled to be made whole where they have satisfied an obligation that primarily belongs to the employer, "so too they should not be relieved of providing the benefits paid for by their insured unless it cannot be said through any fair interpretation of the language of their poli-

cies that the condition upon which the exclusion of liability is predicated does not exist." *Id.* at 565.

Schilling, like the plaintiffs Hunt and Carroll, might have been eligible for worker's compensation coverage under some circumstance. But he did not in fact have such coverage and was not paid worker's compensation benefits. I would accordingly reverse summary judgment for the School and remand.